Charles Herbert WHITE, Petitioner,

v.

Harold SWENSON, Warden, Respondent.

No. 1135.

United States District Court
W. D. Missouri,
Central Division En Banc.

Nov. 2, 1966.

Addendum Nov. 17, 1966.

**44**

Charles Herbert White, pro se.

Norman Anderson, Atty. Gen., for defendant.

---

## MEMORANDUM OPINION OF COURT EN BANC AND ORDER

Before WILLIAM H. BECKER, Chief Judge and JOHN W. OLIVER, WILLIAM R. COLLINSON and ELMO B. HUNTER, District Judges.

JOHN W. OLIVER, District Judge.

This habeas corpus petition, filed by a state convict in the Missouri Penitentiary, vividly illustrates the need of understanding when this Court may do anything except deny a petition for federal habeas corpus without prejudice in order that a particular state prisoner may exhaust his post conviction remedies available in the courts of Missouri.

Because various facets of the general problem of state and federal court jurisdiction are frequently presented to this Court we shall state in some detail in this memorandum opinion of this Court en banc the principles that control the exercise of our federal habeas corpus jurisdiction.

I. Doctrine of Federal Abstention as Codified in Section 2254, Title 28, United States Code.

Section 2254, of Title 28, United States Code, expressly provides that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

That section must be read in light of the Judiciary Act of February 5, 1867, "which first extended federal habeas corpus to state prisoners generally, and which survives, except for some changes in wording, in the present statutory codification," Fay v. Noia, 372 U.S. 391 at 415, 83 S.Ct. 822, 836, 9 L.Ed.2d 837 (1963). The history and development of federal habeas corpus is reviewed in infinite detail on pages 415 to 426 of 372 U.S. of that case.

Fay v. Noia stated that there was "nothing to suggest that the Federal District Court lacked the *power* to order Noia [a State convict] discharged because of a procedural forfeiture he may have incurred under state law" (372 U.S. at 426, 83 S.Ct. at 842, emphasis the Court's). That case added: "On the contrary, the nature of the writ at common law, the language and purpose of the Act of February 5, 1867, and the course of decisions in this Court extending over nearly a century are wholly irreconcilable with such a limitation" (372 U.S. at

426, 83 S.Ct. at 842). In summation, the Supreme Court held:

Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal courts to their constitutional maximum. Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings. State procedural rules plainly must yield to this overriding federal policy. (372 U.S. at 426–427, 83 S.Ct. at 842).

Fay v. Noia included a full discussion of the entirely different question of when and under what circumstances such unquestioned power should be exercised. That case carefully traced the development of the doctrine of federal abstention, now codified in Section 2254. It pointed out that at least as early as 1886 the Supreme Court had unanimously held in Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), that while there could be no question but that "the federal courts had the *power* to discharge a state prisoner restrained in violation of the Federal Constitution, * * * [that] ordinarily the federal court should stay its hand on habeas pending completion of the state court proceedings" (372 U.S. at 418, 83 S.Ct. at 837, emphasis the Court's).

Ex parte Royall established eighty years ago that the Congressional command that federal courts hear a habeas corpus case summarily "does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it" (117 U.S. at 251, 6 S.Ct. at 740). Mr. Justice Harlan, writing for a unanimous court in 1886, added:

That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution. (117 U.S. at 251, 6 S.Ct. at 740).

Fay v. Noia also quoted from Cook v. Hart, 146 U.S. 183 at 194, 13 S.Ct. 40, 36 L.Ed. 934, decided in 1892, to the effect that "while the federal courts have the power and may discharge the accused * * * if he is restrained of his liberty in violation of the federal constitution or laws * * * the practice of exercising such power before the question has been raised or determined in the state court is one which ought not be encouraged" (372 U.S. at 418, 83 S.Ct. at 838). Numerous other Supreme Court decisions to the same effect are cited in footnote 28 on page 419 of 372 U.S., 83 S.Ct. 822.

Fay v. Noia, in direct line with the cases just cited, held:

These decisions fashioned a doctrine of abstention whereby full play would be allowed the States in the administration of their criminal justice without prejudice to federal rights enwoven in the state proceedings. * * * With refinements, this doctrine requiring the exhaustion of state remedies is now codified in 28 U.S.C. § 2254. (372 U.S. at 419, 83 S.Ct. at 838).

And see further page 437–438 of 372 U.S., page 848 of 83 S.Ct., where Fay v. Noia held:

The requirement that the habeas petitioner exhaust state court remedies available to him when he applies for federal habeas corpus relief gives state courts the opportunity to pass upon and correct errors of federal law in the state prisoner's conviction.

■ The fact that a federal court under Section 2254 may exercise broad discretion as to the time and mode of the exercise of its habeas corpus power does not mean that a particular petitioner may not later return to the federal court after his available state court remedies have in fact been exhausted. He may also invoke federal habeas corpus jurisdiction upon a factual showing, in the express language of Section 2254, that "there is either an

absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." As stated in Fay v. Noia:

> The reason of *Ex parte Royall* and its progeny suggested that *after* the state courts had decided the federal question *on the merits* against the habeas petitioner, he could return to the federal court on habeas and there relitigate the question, else a rule of timing would become a rule circumscribing the power of the federal courts on habeas, in defiance of unmistakable congressional intent. (372 U. S. at 420, 83 S.Ct. at 839, emphasis ours).

## II. Circumstances Under Which Exercise of Federal Habeas Corpus Jurisdiction Is Mandatory.

All that has been said in regard to Section 2254 must be read in light of the teaching of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, another of the trilogy decided in 1963. No discretion whatever is vested in a federal court to refuse a full evidentiary hearing in a state prisoner habeas corpus case under particular factual circumstances.

Townsend v. Sain held that "where an applicant for a writ of habeas corpus *alleges* facts which, *if proved* would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew" (372 U.S. at 312, 83 S.Ct. at 757, emphasis ours). Indeed, as part III of that opinion makes crystal clear, a federal district court has no choice in particular factual situations involving state prisoner habeas cases; it is placed under mandatory duty to act. The Supreme Court held:

> We turn now to the considerations which in certain cases may make exercise of that power mandatory. The appropriate standard * * * is this: *Where the facts are in dispute,* the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant *did not receive a full and fair evidentiary hearing in a state court,* either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required *unless* the state court trier of fact has *after a full hearing reliably found the relevant facts.* (372 U.S. at 312-313, 83 S.Ct. at 757, emphasis ours).

On page 313 of 372 U.S., page 757 of 83 S.Ct., the Supreme Court added:

> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Each of those six factual situations are developed in detail on pages 313 to 318 of 372 U.S., 83 S.Ct. 745. And in part IV on pages 318-319 of 372 U.S., page 759 of 83 S.Ct., the Supreme Court set forth its "observations concerning the proper application of the test we have outlined." Those observations suggest procedures that must be followed in order that "acute and unnecessary friction with state organs of criminal justice" may be avoided (372 U.S. at 319, 83 S.Ct. at 760). Such procedures have been and will in the future be followed by this Court. Those procedures were fully stated, discussed and agreed upon at a conference convened by this Court on April 25, 1966 and attended by the Attorney General of the State of Missouri and six Assistant Attorney Generals. A copy of the memorandum of that conference is attached as Appendix A. It was circulated to all interested parties shortly af-

ter that conference was held. This Court, receiving no suggestions to the contrary, has accordingly followed those procedures and applied the principles therein outlined in our consistent effort to avoid state and federal friction.

### III. Circumstances Under Which Evidentiary Hearing May Be Unnecessary in Federal Court.

If state postconviction procedures and the application of those procedures do not adequately comply with the tests established by Townsend v. Sain, a full evidentiary hearing must be afforded a state prisoner in the federal court. The concurring opinions written by Mr. Justice Clark and Mr. Justice Brennan in Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), (a *per curiam* opinion) express the long standing preference of the Supreme Court of the United States in regard to what court system should conduct the required postconviction hearings involving state prisoners.

Mr. Justice Clark noted that "as early as 1949 this Court in Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333, articulated the principle that the States must afford prisoners some 'clearly defined method by which they may raise claims of denial of federal rights,'" and that "in stating that proposition the Court noted: 'The doctrine of exhaustion of state remedies, to which this Court has required the scrupulous adherence of all federal courts * * * presupposes that some adequate state remedy exists. * * *'" (381 U.S. at 337–338, 85 S.Ct. at 1487).

The *per curiam* opinion of the Supreme Court remanded Case v. State of Nebraska back to the Supreme Court of Nebraska because after the grant of certiorari and before the *per curiam* opinion was handed down, the Nebraska Legislature enacted a postconviction procedure, which, on its face and if properly applied, would permit a full evidentiary hearing and an adequate forum for testing the state prisoner's federal claims in the state courts of Nebraska. Mr. Justice

Clark commented that until Nebraska had taken that action, it had to be classified in that group of States whose postconviction procedures were "entirely inadequate" (381 U.S. at 338, 85 S.Ct. 1486).

He also noted that the increasing invocation of federal habeas corpus jurisdiction by state prisoners had "brought about much public agitation and debate over proposed limitations of the habeas corpus jurisdiction of federal courts" but that "strangely enough there has been little light thrown on the necessity for more effective postconviction remedies in the State" (381 U.S. at 338–339, 85 S.Ct. at 1488). He commended those States that had acted earlier than Nebraska, either by the passage of legislation or by promulgation of rule of court (Missouri's Rule 27.26, V.A.M.R. was cited with approval in footnote 3 on page 338, 85 S.Ct. 1486) and concluded that:

Believing that the practical answer to the problem is the enactment by the several States of postconviction remedy statutes I applaud the action of Nebraska. This will enable prisoners to 'air out' their claims in the state courts and will stop the rising conflict presently being generated between federal and state courts. (381 U.S. at 339–340, 85 S.Ct. at 1488–1489).

Mr. Justice Brennan's concurring opinion commented on the interrelation between the availability of state postconviction remedies, when applied consistently with the federal standards defined in the trilogy, and the impact of such proceedings on the question of exhaustion. He indicated his agreement with the petitioner's contention that "substituting federal for state corrective process, instead of directing the State itself to meet its obligation, is a disservice to sound principles of federalism" (381 U.S. at 344, 85 S.Ct. at 1491). Mr. Justice Brennan also agreed that "lack of adequate state procedures has put an intolerable strain on the federal writ and has brought about mounting friction between state and federal courts" (381 U.S. at 344, 85 S.Ct. at

1491). And Mr. Justice Brennan suggested that:

> \* \* \* [I]f the evolution in the coverage of the Fourteenth Amendment and in the scope of federal habeas corpus, see Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, is not to pull the federal judiciary increasingly into state criminal administration, the States must provide broader procedures more hospitable to federal constitutional claims. (381 U.S. at 344, 85 S.Ct. at 1491).

Mr. Justice Brennan stated that "the desirability of minimizing the necessity for resort by state prisoners to federal habeas corpus is not to be denied" (381 U.S. at 344, 85 S.Ct. at 1491). He added:

> Our federal system entrusts the States with primary responsibility for the administration of their criminal laws. The Fourteenth Amendment and the Supremacy Clause make requirements of fair and just procedures an integral part of those laws, and state procedures should ideally include adequate administration of these guarantees as well. *If, by effective processes, the States assumed this burden, the exhaustion requirement of 28 U.S.C. § 2254 (1958 ed.) would clearly promote state primacy in the implementation of these guarantees.* (381 U.S. at 344–345, 85 S.Ct. at 149–1492, emphasis ours).

The power to remove friction between state and federal courts is obviously in the hands of the state courts because, as Mr. Justice Brennan pointed out on page 345 of 381 U.S., 85 S.Ct. 1486, the necessity for evidentiary hearings in the federal courts would, for the most part, be avoided entirely if the state court postconviction procedures and practices are in fact conducted in light of and are consistent with the teaching of Townsend v. Sain. He stated:

> Of greater importance, it would assure not only that meritorious claims would generally be vindicated without any need for federal court intervention, but that nonmeritorious claims would

be fully ventilated, making easier the task of the federal judge if the state prisoner pursued his cause further. See Townsend v. Sain, 372 U.S. 293, 312–318, 83 S.Ct. 745, 9 L.Ed.2d 770. *Greater finality would inevitably attach to state court determinations of federal constitutional questions, because further evidentiary hearings on federal habeas corpus would if the conditions of Townsend v. Sain were met, prove unnecessary.* (emphasis ours) (381 U.S. at 345–346, 85 S.Ct. at 1492).

## IV. Circumstances Under Which Evidentiary Hearing Is Mandatory in Federal Court.

Section 2254 means exactly what it says in regard to when a federal court is under mandatory duty to act in regard to habeas corpus cases involving state prisoners and how a federal court must view the application of the available postconviction remedies of a particular state. In Russell v. Swenson, W.D.Mo.1965, 251 F. Supp. 196, Chief Judge Becker of this Court commented on Missouri's Rule 27.-26 as follows:

> Following the rendition in 1963 by the Supreme Court of the United States of the famous trilogy, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, the Supreme Court of Missouri recognized and assumed its duties defined in the trilogy by directing state trial courts to comply with the current federal decisions by adjudicating post-conviction motions under Missouri Criminal Rule 27.26 under current federal standards. State v. Pickel, Mo., 376 S.W.2d 181; State v. Herron (Mo.Sup.), 376 S.W. 2d 192. (251 F.Supp. at 198).

Russell v. Swenson repeatedly recognized, of course, that Missouri's Rule 27.-26 postconviction proceedings must be conducted "under the current federal standards" and "under the standards of the trilogy" or else this Court would be required to hold that the administration

of Missouri Rule 27.26 was "inadequate or ineffective" (251 F.Supp. at 198, 199, and 201). On page 201 the traditional and long established doctrine of federal abstention and the limitations of that doctrine were stated as follows:

> Until a motion exhausting the available state remedies under Rule 27.26 has been denied on its merits under the standards of the trilogy by the trial court and the Supreme Court of Missouri, this Court should entertain federal habeas corpus only in cases involving exceptional circumstances showing the motion under Rule 27.26 is inadequate or ineffective.

What was there said was in reiteration of the long established federal abstention now codified in present Section 2254. That section makes clear that a federal court is under mandatory duty to exercise its habeas corpus power in three different instances. The first is when "the applicant has exhausted the remedies available in the courts of the State." In Missouri, generally speaking, this means that this Court will not act on a state convict's application for habeas corpus (with some sharp exceptions that relate to federal questions presented and decided by the Supreme Court of Missouri on direct appeal but not here important) until and unless a Missouri Rule 27.26 motion is filed and determined on the merits in the state committing court and any adverse ruling is affirmed on the merits on appeal by the Supreme Court of Missouri. Cases involving persons confined but not convicted are governed by other principles that need not be here discussed.

The entirely different question of whether this Court will be required to hold an evidentiary hearing is dependent almost entirely upon whether the type of evidentiary hearing required by Townsend v. Sain has been granted and conducted in the state in accordance with the federal standards established by the trilogy.

The second instance in which, under Section 2254, a federal court is under mandatory duty to proceed is when, on the facts and applicable state law, there is "an absence of available State corrective process." That was the situation presented in Case v. State of Nebraska before Nebraska enacted its postconviction statute. A statute was necessary because the Supreme Court of Nebraska had established a rule of decision that limited the scope of its habeas corpus proceedings to a simple inquiry of whether "the court imposing [sentence] had jurisdiction of the offense and of the person charged with the crime, and [the question of whether] the sentence was within the power of the court" (381 U.S. at 337, 85 S.Ct. at 1487). A construction or application of Missouri Rule 27.26 in the same manner would require a federal court determination that there is "an absence of available State corrective process in Missouri" within the meaning of Section 2254.

The third instance provided in Section 2254 is when, on the facts, "the existence of circumstances rendering such process ineffective to protect the rights of the prisoner" is apparent on the face of the state court records or is otherwise established. A state's failure to administer its postconviction procedure in accordance with the federal standards set forth in the trilogy is a prime example of such a circumstance. Such was the factual situation presented by Donnell v. Swenson, W.D.Mo., 1966, 258 F.Supp. 317, decided August 23, 1966, but not yet reported.

Petitioner alleged in that case that he had not in fact been represented by counsel although the state trial court's records at all levels apparently showed that he had been. That question of fact could not, under applicable federal constitutional standards, be decided without an evidentiary hearing. It was the essence of petitioner's allegation that the state court records were false. The state courts, both trial and appellate, refused to grant the petitioner an evidentiary hearing as required by Townsend v. Sain. Available state postconviction remedies were therefore exhausted under Section

2254. This Court was thus required reluctantly to hold the evidentiary hearing required by the trilogy. The evidence adduced at that hearing established beyond any doubt that the petitioner's allegation was true and that the records of the committing court were inaccurate.

V. Scope of State Postconviction Remedies Defined and Measured by Trilogy; Not by State Practice.

The Supreme Court of Missouri has several times noted that its Rule 27.26 is patterned after Section 2255 of Title 28, United States Code, the long existing federal postconviction remedy. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068 (1963), is the most recent Supreme Court of the United States case in which the scope of Section 2255 was defined. Constructions of Missouri Rule 27.26 inconsistent with the Supreme Court's construction of Section 2255 will obviously force the federal courts to grant the postconviction evidentiary hearings required by the trilogy. Indeed, in some instances to be presently mentioned, Missouri may have to construe her Rule 27.26 more broadly than Section 2255 has been construed by some of the lower federal courts if an evidentiary hearing in the federal court is to be avoided.

Sanders v. United States formulated basic rules to guide the lower federal courts in the conduct of their federal post conviction proceedings. Sanders v. United States made frequent incorporating references to Townsend v. Sain and Fay v. Noia. Discussion of what kind of hearing is constitutionally required, independent of the express language of Section 2255, was deemed unnecessary because "we canvassed the criteria of a full and fair evidentiary hearing recently in Townsend v. Sain, supra, and that discussion need not be repeated here" (373 U.S. at 17, 83 S.Ct. at 1078). On page 18 of 373 U.S., page 1078 of 83 S.Ct. in connection with another point, Sanders v. United States expressly held that "the principles developed in those decisions [referring to Townsend v. Sain and Fay v. Noia] govern equally here."

It is of importance to note that a construction of Missouri Rule 27.26 in a manner as broad as the construction given Section 2255 by some of the lower federal court decisions, particularly in some of the cases decided before Sanders v. United States, will not always avoid the necessity for an evidentiary hearing in the federal court. The constitutional question presented by this case is a good example.

This case involves a Fourth Amendment search and seizure question. The factual situation presented in such cases illustrates the proposition that unless the Missouri courts construe Missouri Rule 27.26 more broadly than some lower federal courts have construed Section 2255, the failure to hold an evidentiary hearing in the state court may require that such a hearing be held in the federal court. This apparent, but possibly not real, contradiction merely reflects that the basic questions do not turn on statutory constructions that relate either to the scope of Section 2255 or to the scope of Missouri Rule 27.26 but that attention must be focused on the application of the constitutional impact of the trilogy upon both federal and state court postconviction procedures and upon what the Supreme Court has held those procedures must include in specific regard to a particular convict's right to a full and fair evidentiary hearing of the allegations of his alleged violation of federal constitutional right.

The point of beginning in regard to the Fourth Amendment cases under current law is Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). That case held that admission in a criminal proceeding in a state court of evidence obtained by searches and seizures in violation of the Federal Constitution is violation of a federal constitutional right which invalidates a conviction. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) was expressly overruled by Mapp v. Ohio and the principles applicable to federal prosecutions for over fifty years under Weeks v. United States, 232 U.S. 383, 34 S.Ct.

341, 58 L.Ed. 652 (1914), were made applicable to all state prosecutions as a matter of federal constitutional law.

The *Weeks* case, as is well known, was tried in this Court. The late Martin J. O'Donnell, counsel for the defendant in that case, followed what was then familiar Missouri practice when he filed a pretrial motion for an order for the return of the illegally seized property of his client. The denial of that motion by the late Judge Van Valkenburgh, later Circuit Judge, was reversed by the Supreme Court. Missouri, of course, formally adopted the rule of Weeks v. United States and other Supreme Court of the United States cases in 1924 in State v. Owens, (Mo.Sup.Ct. en banc 1924) 302 Mo. 348, 259 S.W. 100, as was recently noted by Judge Henley in State v. Watson, (Mo.Sup.Ct. Div. 1, 1964) 386 S.W. 2d 24 at 28.

■ The impact of Mapp v. Ohio on cases which were finally decided after June 19, 1961, the date of Mapp v. Ohio's decision (see Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)), is that regardless of the search and seizure rules of decision of a particular state, a defendant convicted in a state court now has a federal right to have an alleged Fourth Amendment question litigated in a postconviction proceeding in accordance with the principles of the trilogy. United States ex rel. West v. LaValle, Warden, 2 Cir. 1964, 335 F.2d 230, and Hubbard v. Tinsley, Warden, 10 Cir. 1964, 336 F.2d 854, are examples of reversals by United States Courts of Appeal of United States District Courts' failures to hold evidentiary hearings in connection with habeas corpus petitions filed by state prisoners alleging Fourth Amendment violations. United States ex rel. Holloway v. Reincke, Warden, D.Conn.1964, 229 F.Supp. 132, and Nelson v. Hancock, Warden, D.New Hamp. 1965, 239 F.Supp. 857, are examples of federal district court recognition of the impact of the trilogy in such cases.

■ It is therefore clear that a state prisoner may invoke federal habeas corpus jurisdiction to test his allegation that his Fourth Amendment rights were violated in the course of his state conviction and that such cases must be processed in the federal court in accordance with the principles established by the trilogy.

It must be reiterated that the construction and application by a state court of its postconviction procedures in accordance with some lower federal court's construction and application of the scope of federal Section 2255 in regard to Fourth Amendment questions will not avoid the necessity of a full evidentiary hearing in the federal court. The majority opinion in Thornton v. United States, D.C.Cir. 1966, 368 F.2d 822, decided October 6, 1966, not yet reported, collects and follows the lower federal court opinions that hold that ordinarily a claim of illegal search and seizure may not be raised by a federal prisoner under Section 2255. Judge Skelly Wright's dissent collects the lower federal court decisions that hold to the contrary.

■ It is important to recognize the legal question raised by the majority and dissenting opinions in *Thornton* in regard to the scope of Section 2255 after the trilogy. Our judgment on that question must be reserved and does not control our duty to follow the command of the trilogy in regard to the scope of our mandatory habeas corpus jurisdiction when invoked by a state prisoner who alleges violation of Fourth Amendment rights. The trilogy requires that we grant the state convict habeas applicant a full and fair evidentiary hearing in accordance with the federal standards unless he has been granted such a hearing in the state court, or unless the issues can be determined conclusively from the undisputed files and records in the case. In this very case, for example, if the state trial judge who processes petitioner's Missouri Rule 27.26 motion, if one be filed, does not grant a full evidentiary hearing on the Fourth Amendment question presented by this case, and such denial is affirmed by the Supreme Court of Missouri, it will be the duty of this Court to grant such a hearing under the command of the trilogy.

VI. Analogy, Subject to Requirements of Trilogy, of Section 2255, Title 28, United States Code to State Postconviction Remedies—The "Files and Record" Problem.

In spite of what we have just said in regard to lack of controlling effect of cases that relate solely to questions concerning the scope of a statutory postconviction remedy, Sanders v. United States does provide definite guidelines in regard to when hearings are required under the express language of Section 2255. That case states the equally important limitations that are inherent in the language of that section which permits a denial of a postconviction motion without hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The facts in Sanders v. United States involved a petitioner who was serving a 15 year sentence for bank robbery imposed on a plea of guilty. For present purposes, attention is focused on the petitioner's second Section 2255 motion which was denied without an evidentiary hearing. The Supreme Court reversed the Court of Appeals' affirmance of the District Court's denial of that motion.

Petitioner's second Section 2255 motion alleged that at the time he had entered his plea of guilty and at the time of sentence "he was mentally incompetent as a result of narcotics administered to him while he was held in the Sacramento County jail pending trial" (373 U.S. at 5, 83 S.Ct. at 1072).

The action of the District Court in connection with that motion was as follows:

The District Court denied the motion without hearing, stating: "As there is no reason given, or apparent to this Court, why petitioner could not, and should not, have raised the issue of mental incompetency at the time of his first motion, the Court will refuse, in the exercise of its statutory discretion, to entertain the present petition." (Footnote omitted.) The court also stated that "petitioner's complaints are without merit in fact." (373 U.S. at 5–6, 83 S.Ct. at 1072).

The Supreme Court noted that petitioner's second motion "alleged facts which, if true, might entitle him to relief" (373 U.S. at 4, 83 S.Ct. at 1071). The spirit in which allegations of deprivation of constitutional rights must be read is stated on page 22 of 373 U.S., page 1080 of 83 S.Ct.: "An applicant for such relief ought not to be held to the niceties of lawyers' pleadings or be cursorily dismissed because his claim seems unlikely to prove meritorious." On page 6 of 373 U.S., page 1072 of 83 S.Ct., the Supreme Court held: "The statute in terms requires that a prisoner shall be granted a hearing on a motion which alleges sufficient facts to support a claim for relief unless the motion and the files and records of the case 'conclusively show' that the claim is without merit."

Sanders v. United States held that a movant's postconviction motion may not be dismissed without hearing merely because "his application is vexatious or repetitious, or that his claim lacks any substance" (373 U.S. at 22, 83 S.Ct. at 1080–1081). Proof of such matters must, according to the teachings of that case, "be fairly demonstrated" (373 U.S. at 22, 83 S.Ct. 1068).

The Supreme Court held on the particular facts involved that " 'the files and records of the case,' including the transcript, could not 'conclusively show' that the claim alleged in the second motion entitled the petitioner to no relief." The Supreme Court explained that:

The crucial allegation of the second motion was that petitioner's alleged mental incompetency was the result of administration of narcotic drugs during the period petitioner was held in the Sacramento County Jail pending trial in the instant case. However regular the proceedings at which he signed a waiver of indictment, declined assistance of counsel, and pleaded guilty might appear from the transcript, it still might be the case that petitioner did not make an intelligent and understanding waiver of his constitutional rights. See Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7

L.Ed.2d 473; Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed. 2d 167; Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Taylor v. United States, 193 F.2d 411 (C.A. 10th Cir., 1952). Cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. *For the facts on which petitioner's claim in his second application is predicated are outside the record.* * * * That the judge may have thought that he acted with intelligence and understanding in responding to the judge's inquiries cannot 'conclusively show,' as the statute requires, that there is no merit in his present claim. Cf. Machibroda v. United States, supra, 368 U.S. at 495, 82 S.Ct. at 514, 7 L.Ed.2d 473 (373 U.S. at 19–20, 83 S.Ct. at 1079, emphasis ours).

The double citation to Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510 (1961), directed attention to the established rule that findings of fact on matters placed in issue by the allegations of a petitioner's motion can not be made without a full evidentiary hearing unless all the material facts can be conclusively established by the files and records in the case. In that case the petitioner was serving a twenty-five year bank robbery sentence imposed on a plea of guilty in 1956. In 1959 he filed a Section 2255 motion alleging that his guilty plea was not voluntary because it had been "induced by promises made by the Assistant United States Attorney in charge of the prosecution" (368 U.S. at 488, 82 S.Ct. at 511) and that those promises had "been made upon the authority of the United States Attorney and [were] agreeable to the District Judge" (368 U.S. at 489, 82 S. Ct. at 511). The District Court did not hold an evidentiary hearing but nevertheless "determined that the petitioner's allegations * * * were false" (368 U.S. at 492, 82 S.Ct. at 513). The Court of Appeals affirmed.

The Supreme Court reversed, relying upon Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941), and other cases. The Court held:

There can be no doubt that, if the allegations contained in the petitioner's motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. (368 U.S. at 493, 82 S.Ct. at 513).

On page 494 of 368 U.S., page 514 of 82 S.Ct., Mr. Justice Stewart held:

The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Goverment's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.

That determination was reiterated in Sanders v. United States four years later. It was but an application of the principle stated by Mr. Justice Roberts for a unanimous court a quarter of a century ago in Walker v. Johnston. It was there held that:

Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge. The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. (368 U.S. at 495, 82 S.Ct. at 514, quoting from 312 U.S. at 287, 61 S.Ct. 574).

This Court has found that required use of standard forms of petitions and procedures for both state and federal convicts as set forth in Appendix A, together with the excellent cooperation between appointed counsel and counsel representing the officials of the State of Missouri and

the Federal Government, have materially saved judicial time in the holding of required postconviction evidentiary hearings. Undoubtedly those procedures can and will be improved. All courts, both state and federal, share the common concern to devise improved and more efficient techniques of judicial administration. We look forward to the results of studies that have been recently undertaken by particular Missouri courts, confident that the ideas there developed may be utilized to improve the present procedures of this Court.

### VII. Inapplicability of Res Judicata in Postconviction Proceedings.

Sanders v. United States must be followed by both state and federal courts in regard to its definitive acceptance of the familiar principle that *res judicata* is inapplicable in habeas corpus proceedings. Sanders v. United States held that "conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged" (373 U.S. at 8, 83 S.Ct. at 1073).

This does not mean that every criminal case is open for second trial. The necessity for postconviction evidentiary hearings will largely depend upon how a particular case is tried in the first instance and upon how the federal questions are reached and reliably decided on the original appeal. The last report of the Administrative Office of the United States Courts shows that Section 2255 motions filed in all federal district courts throughout the United States decreased from 1,122 filed by federal convicts in 1965 to only 712 in 1966, a decrease of 37%.

Petitions for federal habeas corpus filed by state convicts, on the other hand, continued to rise from 5,008 filed in 1965 to 5,950 in 1966, a 19% increase. See pages II–34 and II–35 of the 1966 Annual Report of the Administrative Office of the United States Courts.

This Court believes that improved federal procedures at the time of arraignment and trial, customary representation of defendants by competent counsel through every stage of the criminal proceedings, and broadened scope of appellate review may have played a part in the decrease in the filing of Section 2255 motions by federal prisoners. Employment of similar or better procedures in the administration of state criminal justice should, in time, produce a similar decrease in state prisoner postconviction cases in both the state and federal courts.

### VIII. Coordination of State and Federal Postconviction Proceedings.

Close and careful study of the trilogy, recognition of the impact of those cases on the long established doctrine of federal abstention as codified in Section 2254, and rational cooperative attack upon the problem of elimination of all avoidable friction between the state and federal courts admittedly requires some adjustment in judicial attitude and in the manner in which postconviction applications from state prisoners may have customarily been treated in the past by both state and federal courts.

The Supreme Court in Case v. State of Nebraska, supra, cites with approval a thoughtful article by Daniel Meador entitled "Accommodating State Criminal Procedure and Federal Postconviction Review," 50 A.B.A.J. 928 (October, 1964). That article was earlier cited with approval by the Supreme Court of the United States in Henry v. State of Mississippi, 379 U.S. 443 at 453, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

Meador stated that since at least the 1940's it has been well established that "any [federal] constitutional violation in a state prosecution affords a ground for relief by federal habeas corpus" (page 928). He concluded that the long and short of the trilogy was "that at some point in the criminal process a convicted person [shall] get a full evidentiary hearing on the merits of every federal right he asserts" and that "if the prisoner has had no adequate hearing in the state court he will surely get one in the federal court" (page 929).

Meador, we believe, was correct in saying that "what [the state courts] do in large measure will determine what the federal courts do" (page 929). In fact, he suggested to those interested in maintaining the integrity of state administration of criminal justice that "rather than bemoan the increased role played by federal judges in state criminal cases, we can take the positive steps open to reduce that role by putting the job back where it belongs—in the state courts" (page 929). In order, however, to accomplish that task, Meador suggested that "State Judges must learn to read inartfully drawn petitions liberally in favor of the petitioner, for that is what the federal courts [must] do;" that "there must not only be a state hearing on the [federal constitutional] issue, there must be a complete record of the hearing;" that "a conventional order or judgment entry standing alone will be ineffectual to foreclose federal judicial inquiry;" and finally that "state judges and state prosecutors must invest more time and care in litigating an accused's constitutional questions than has perhaps been customary * * * in the past" (page 930).

It is not for this Court to say how Missouri must construe its Rule 27.26. This Court says no more about Missouri Rule 27.26 than the Supreme Court of the United States said in Case v. State of Nebraska, about Nebraska's legislatively adopted postconviction remedy, namely: "On its face, the [postconviction remedy] provides for a hearing of petitions such as this one, alleging denial of federal constitutional rights." This Court, however, as additional particular cases come before it, must determine not only whether or not a full and fair evidentiary hearing has or has not been granted in accordance with the federal standards set forth in the trilogy, but whether the facts have been reliably found and whether applicable federal standards have been properly applied; and this Court must, if such a required hearing has not been held, afford the petitioner his rights in that regard.

What this Court will and must do, as Meador suggested over three years ago, will be determined in large measure by what the trial and appellate courts of Missouri do in the future.

Public commendation of the Missouri courts, their judicial machinery, and their initial approach in the practical administration of that procedure is a matter of public record. See, inter alia, Postconviction Applications, 39 F.R.D. 281, 291 at 294–295 and 298.

Some of the recent decisions of the Supreme Court of Missouri reflect a commendably broad application of Missouri Rule 27.26 fully in compliance with federal standards. In State v. Ford, (Mo. Sup.Ct.Div. 1, 1966) 403 S.W.2d 611, for example, it was found necessary to reverse a trial court for not having vacated a sentence under Rule 27.26 in a case in which the sentence was based on a void information. See also State v. Scott, (Mo.Sup.Ct. Div. 2, 1966) 404 S.W.2d 699, for another example, in which the Supreme Court of Missouri remanded a Rule 27.26 case because the trial court had failed to summon all witnesses and had failed to comply with the plain requirements of Rule 27.26 that the trial judge shall, after prompt hearing, "determine the issues and make findings of fact and conclusions of law with respect thereto."

Russell v. Swenson, supra, points out that the failure of the state courts to make specific findings of fact and definitive conclusions of law enunciating appropriate current constitutional standards is a guarantee that an evidentiary hearing must be held in the federal court if the petitioner alleges a violation of a federal constitutional right and places facts in dispute.

The presence of full and specific findings of fact and definitive conclusions of law applying current federal constitutional principles in a state court record, of course, may enable the federal court to proceed in the usual habeas case involving a state convict on a stipulated record without the necessity of holding any further hearing.

**56**

An election to depart from Missouri's initial construction and application of its Rule 27.26 cases, as described in Russell v. Swenson, will be reflected in the number of evidentiary hearings that will be conducted in federal rather than state courts. Such an election, of course, cannot affect the controlling force of the trilogy, repeal the federal habeas corpus statutes, or alter the doctrine of federal abstention and its limitations as codified in Section 2254. Such an election would, of course, increase frustration and create unnecessary friction between two judicial systems bound by the same Supreme Court of the United States.

 Control of and responsibility for the determination of the judicial policy of the State of Missouri is, of course, vested in and rests upon the Supreme Court of Missouri. This Court will continue to attempt to cooperate in every possible legal way with the trial and appellate courts of Missouri and with counsel representing the State of Missouri to the end that procedures be designed that will render the implementation of the trilogy least burdensome to all courts on whom the responsibility rests. See Collateral Postconviction Review of State and Federal Criminal Judgments on Habeas Corpus and on Section 2255 Motions—View of a District Judge, 33 F.R.D. 452 at 492.

### IX. Application of Principles to Case at Bar.

Application of the principles to the undisputed facts presented by this case is not difficult.

Petitioner filed a copy of the state court trial transcript as an exhibit in support of his federal habeas petition. That transcript, the accuracy of which is not contested, reflects that a motion to suppress evidence on the ground that "the search and seizure violated the defendant's rights under Section 15 of Article I of the Constitution of Missouri [V.A.M.S.], and the 14th Amendment of the United States Constitution" was filed before trial (Tr. 6); that evidence of defendant and one police officer was re-

ceived at a preliminary hearing out of the presence of the jury (Tr. 8–22); that defense counsel was not then prepared to call the trial judge's attention to a single case—although he suggested he could "find them in about five [or ten] minutes" (Tr. 22); that the motion was initially denied by the trial judge (Tr. 23); but that a rehearing was granted at which the testimony of another witness was taken at a second preliminary hearing out of the presence of the jury (Tr. 23–35); that the testimony of all witnesses with personal knowledge was not received at any hearing (Tr. 36); that the trial judge, again without the benefit of briefs submitted by either side (or even oral citation of cases), again denied the motion to suppress (Tr. 38); and the case was ordered to trial (Tr. 45).

The federal search and seizure question was unsuccessfully presented at the trial in defendant's motion for acquittal at the close of the State's evidence (Tr. 96); in defendant's motion at the close of all the evidence (Tr. 100); in defendant's motion for new trial (Tr. 116); and was described at argument on that motion in the trial court as "the most substantial point of the motion" (Tr. 118).

Additional facts relevant to our consideration of the Section 2254 exhaustion question are stated in State v. White, (Mo.Sup.Ct.1966) 403 S.W.2d 603, reporting the disposition of defendant's appeal on the merits. The Supreme Court of Missouri there, in effect, postponed consideration of the search and seizure question. It refused to consider that federal question on the merits because of the failure of defendant's counsel to have filed a timely motion for new trial.

 The significant facts so far as exhaustion is concerned are (a) that the Supreme Court of Missouri has not yet determined the federal search and seizure question on the merits; and (b) Missouri Rule 27.26, on its face, if construed and applied in accordance with federal standards, affords petitioner an adequate and available state court remedy.

Missouri Rule 27.26, like federal Section 2255, contemplates that a postconviction motion may be filed in a case in which an appeal has never been taken. State v. Ford, supra, cited in part VIII above, was such a case. It may be that the Supreme Court of Missouri would not hold that the fact an appeal aborted on a technical ground would bar the filing of a Rule 27.26 motion. Compare Black v. United States, (9th Cir. 1959) 269 F.2d 38. If it did so hold, the question of the adequacy of the corrective process of Missouri Rule 27.26 becomes acute.

Unless some unanticipated judicial barrier is erected by the Supreme Court of Missouri's construction of its Rule 27.26, we must assume for purposes of exhaustion that petitioner has the present right to file a Rule 27.26 motion in his committing court, again raising the federal search and seizure question, and thereafter to perfect a timely appeal of any denial of that motion to the Supreme Court of Missouri.

The future course of petitioner's efforts to exhaust his currently available state court remedies present a number of alternatives. Some of them may be stated as follows:

1. Petitioner's Missouri Rule 27.26 motion could be denied by the state trial court without (a) a full and fair evidentiary hearing being granted, or (b) the state trial court could grant such a hearing but fail of record reliably to find the facts; or (c) fail of record properly to enunciate; or (d) fail of record properly to apply currently applicable federal constitutional standards to the facts as reliably found.

Should the Supreme Court of Missouri reverse the trial court and by its mandate order it to comply with current federal constitutional standards in regard to all four of the particulars stated, petitioner will not have exhausted his available state court remedies. This Court would therefore abstain from the exercise of its habeas corpus jurisdiction until the state trial and appellate courts have had an opportunity to process the Rule 27.26 motion again after reversal and remand by the Supreme Court of Missouri.

2. If the Supreme Court of Missouri should affirm rather than reverse the state trial court's denial of petitioner's Missouri Rule 27.26 motion under the facts assumed in paragraph 1 above, plaintiff will have exhausted his available state remedies.

Should the petitioner then file a new federal habeas corpus petition this Court would be required to exercise its jurisdiction, grant the evidentiary hearing required by the trilogy, and proceed to determine the case.

3. The trial court, originally or on mandate from the Supreme Court of Missouri, could, consistently with the command of the trilogy, (a) grant a full and fair evidentiary hearing on petitioner's Missouri Rule 27.26 motion; (b) reliably find the facts; (c) clearly enunciate on the record the current applicable federal constitutional standards; and (d) on the record properly apply such standards to facts as reliably found, but deny relief on the motion.

Petitioner could fail or refuse to appeal to the Supreme Court of Missouri. Under those circumstances, this Court would abstain from the exercise of its habeas corpus jurisdiction because petitioner will have failed to exhaust his currently available state court remedies by appealing to the Supreme Court of Missouri.

4. If, under the same facts stated in paragraph 3, petitioner attempts to appeal to the Supreme Court of Missouri but, for some reason that appeal aborted, or petitioner's appeal is in fact dismissed by the Supreme Court of Missouri for some valid state procedural or other reason, or if, although the appeal is not dismissed but for some valid state procedural reason the Supreme Court of Missouri does not reach the merits of the

federal claims alleged in petitioner's Missouri Rule 27.26 motion, this Court would ordinarily abstain from exercising its habeas corpus jurisdiction, because petitioner can, if current federal standards are recognized by the Supreme Court of Missouri, file another Missouri Rule 27.26 motion in which his federal claims are again presented to the state trial court on the merits.

Sanders v. United States teaches that conventional notions of finality do not apply to postconviction proceedings involving alleged violations of federal constitutional rights. No Supreme Court of Missouri decision (known to this Court) exists that would prevent petitioner under any of the circumstances stated from filing a new Missouri Rule 27.26 motion in the state trial court and from then perfecting a second and valid appeal on the merits to the Supreme Court of Missouri. Until that is done unsuccessfully (by this or any other petitioner) it cannot be assumed that petitioner will have exhausted his presently available state court remedies.

5. If, under the same facts as stated in paragraph 3, the Supreme Court of Missouri hears petitioner's appeal on the merits and affirms the trial court's denial of petitioner's Missouri Rule 27.26 motion, petitioner will have exhausted his state court remedies and this Court will exercise its federal habeas corpus jurisdiction but will not be required to hold any evidentiary hearing in all cases.

Under these circumstances, and subject only to allegations of newly discovered evidence (which in any event must first be presented to the state trial court), this Court would be able to reach the legal questions presented without the necessity of granting any further and additional evidentiary hearing. If this Court could then conscientiously determine that current federal constitutional standards had been correctly enunciated and applied to the facts reliably found

by the state courts, it would dismiss petitioner's federal habeas corpus petition on the merits without further evidentiary hearing.

6. This Court is cognizant of the Supreme Court of Missouri's current appellate practice of considering Missouri Rule 27.26 appeals *de novo*. See 42 V.A.M.S. Missouri Supreme Court Rule 28.05 [1] which expressly provides that "upon an appeal taken in a proceeding brought under the provisions of Rule 27.26, the appellate court shall review the matter *de novo*." In many cases in which state trial courts have failed to "determine the issues and make findings of fact and conclusions of law with respect thereto," as required by the express language of Missouri Rule 27.26, the Supreme Court of Missouri has nevertheless undertaken that burden in the exercise of its *de novo* review power. For an example, see State v. Noble, (Mo. Sup.Ct., Div. 1, 1965) 387 S.W.2d 522 at 526, in which the Supreme Court of Missouri specifically noted that the trial court had failed to make findings of fact and conclusions of law.

If the trial court should grant a full and fair evidentiary hearing but (a) fail of record reliably to find the facts; or (b) fail of record to enunciate and apply currently applicable federal constitutional standards, but the Supreme Court of Missouri, in the exercise of its *de novo* power of review, supplies those deficiencies in its opinion on the merits, this Court will accept the findings of fact reliably found in the Supreme Court of Missouri's opinion on the merits as though such facts had been reliably found by the trial court as apparently contemplated by Missouri Rule 27.26.

 It must be understood that "although the [United States] district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law," and that

---

1. Now Crim.Rule 28.05, V.A.M.R.

"it is the [United States] district judge's duty to apply the applicable federal law to the state court fact findings independently" (Townsend v. Sain, 372 U.S. at 318, 83 S.Ct. at 760). Both the state and the lower federal courts are under a duty to apply the law as determined by the Supreme Court of the United States and it should not be anticipated that different views of that law will be expressed by those court systems.

Should the Supreme Court of Missouri in the exercise of its power of *de novo* review reliably find the facts and enunciate and apply currently applicable federal constitutional standards to the facts reliably found, petitioner will have exhausted his available state court remedies. This Court in that event would proceed to exercise its habeas corpus jurisdiction without the necessity of granting any further evidentiary hearing in the same manner as stated in paragraph 5.

■ 7. We add a final open-ended category to direct attention to the fact that we cannot anticipate all the situations wherein an evidentiary hearing in this Court may be required. We can only state in language of Townsend v. Sain that we recognize that it is "the duty [of this Court] to try the facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts" and that "if because no record can be obtained the [United States] district judge has no way of determining whether a full and fair hearing which resulted in findings of relevant fact was vouchsafed, he must hold one" (372 U.S. at 318 and 319, 83 S.Ct. at 759 and 760).

■ We will continue our efforts to discharge our duty to give practical form to the principles announced by the Supreme Court of the United States in the trilogy. In obedience to the command of Townsend v. Sain, this Court shall endeavor to discharge our paramount responsibility to avoid "the too promiscuous grant of evidentiary hearings on habeas [that] could both swamp the dockets of [this] District Courts and cause acute and unnecessary friction with state organs of criminal justice," keeping in mind that "too limited use of such hearings [might] allow many grave constitutional errors to go forever uncorrected" (372 U.S. at 319, 83 S.Ct. at 760).

■ In this particular case it is obvious that petitioner has the right under currently available state court procedures to file a Missouri Rule 27.26 motion in his committing court and the future right, if necessary to be exercised, to appeal any denial of that motion to the Supreme Court of Missouri in order that the latter court be. given a fair opportunity to pass on the merits of the federal search and seizure question that was not properly presented to that Court in connection with petitioner's original appeal. Until such steps are taken, this Court will not exercise jurisdiction over petitioner's present habeas corpus petition.

X. Necessity for Exhaustion in Regard to Competency of Counsel Question.

■ The undisputed facts revealed by data presently of record in this Court suggest that the Missouri courts may also desire to make full and fair inquiry into another federal question that might have been injected into this case by the Supreme Court of Missouri's disposition of petitioner's appeal on the merits.

That question obviously revolves around the competency of counsel as reflected by the service rendered in this particular case in connection with defense counsel's failure to have filed a timely motion for new trial and their failure to call appropriate federal cases to the attention of the Missouri courts. Such question, of course, must be determined on the particular facts of each particular case and what is said here does not suggest any judgment of this Court on the facts as they may be developed at an evidentiary hearing.

■ We mention this question only to point out that if the petitioner should ever desire to present such a question to this Court, he is required by law to exhaust his available state court remedies with respect to that possible additional federal question before this Court, except under the most unusual circumstances, would exercise its habeas corpus power in regard thereto.

Because of the anticipated number of cases that undoubtedly will be filed in this Court in which the principles herein stated will be applied, this Memorandum Opinion and Order was circulated for approval by all the active judges of this Court whose suggestions and additions have been incorporated into what has been stated. Chief Judge BECKER and Judges COLLINSON and HUNTER have authorized me to state their concurrence with this Memorandum Opinion and Order. We are all agreed that it should be published in order that it serve as an en banc opinion of this Court.

For the reasons stated, petitioner's petition should be and the same is hereby dismissed without prejudice.

It is so ordered.

## ADDENDUM TO MEMORANDUM OPINION OF COURT EN BANC FILED NOVEMBER 2, 1966

In its closing days the 89th Congress, 2d Session, passed amendments to two sections of the Habeas Corpus Act as contained in Chapter 153 of the United States Code. The President signed Public Law 89–711, 89th Congress, on November 2, 1966, the same day this Court handed down its en banc opinion in this case. It is appropriate that we determine whether those most recently enacted amendments require any changes in what is held in our original opinion. It is the opinion of this Court en banc that no changes are required for the reasons to be stated.

■ The amendments to Sections 2244 and 2254 of Title 28, United States Code, undertake to codify the principles of the trilogy. Neither amended section requires any change in what is said above; indeed, both amendments indicate that the principles established by the Supreme Court of the United States in the trilogy meet the approval of the Congress of the United States. A copy of Public Law 89–711, effecting the amendments of Sections 2244 and 2254, is attached as Appendix B.

For all practical purposes the rules of decision stated in Townsend v. Sain, 372 U.S. 293 at 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), in Fay v. Noia, 372 U.S. 391 at 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and in Sanders v. United States, 373 U.S. 1 at 15, 83 S.Ct. 1068, 10 L.Ed.2d 148, are contained in the amendment to Section 2244; and what was held in Townsend v. Sain, supra, 372 U.S. at pages 312–313, and elaborated at pages 313 to 318, 83 S.Ct. 745 are contained in the amendments to Section 2254. New subsection (e) of recently amended Section 2254 makes clear that "if the applicant, because of indigency or other reason is unable to produce [the record of the State court proceeding] then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official."

Both the Senate Judiciary Committee Report No. 1797 and House Judiciary Committee Report No. 1892 of the 89th Congress, 2d Session, show that H.R. 5958, amending Sections 2244 and 2254, adopted the exact text of the federal habeas corpus legislation recommended to the Congress by the Judicial Conference of the United States on September 23, 1965. Both reports show that the Judicial Conference of the United States had long been seeking Congressional action in this field and that earlier recommendations had been made by it to the 84th, 85th, 86th, 88th, and the present 89th Congress.

The Habeas Corpus Committee of the Judicial Conference, that wrote H.R.

5958, and whose final recommendation was accepted both by the Judicial Conference and by the Congress, was composed of Circuit Judges Simon E. Sobeloff, Phillip Foreman, Luther M. Swygert, J. Skelly Wright and Orie L. Phillips (Chairman). Senate Report No. 1797 quoted the following paragraph from the report of that Committee as a part of its report to the Senate:

It is the opinion of your committee that the proposed legislation, if enacted, will be a strong inducement to the States that have not already done so to provide adequate postconviction remedies and procedures and to make and keep available records of evidentiary matter in criminal and postconviction proceedings, and to the State courts in criminal proceedings to safeguard the constitutional rights of defendants.

The House Judiciary Committee reviewed the history of the various recommendations of the Judicial Conference of the United States and added on page 7 of its Report No. 1892 that:

The Committee on Habeas Corpus of the Conference of [State] Chief Justices, at the annual meeting in August 7, 1965, notwithstanding the deletion of provisions relative to three-judge court review of applications for habeas corpus from State prisoners, approves and supports those provisions of H.R. 5958 relating to presumptions of validity of State court determinations on the merits of factual issues.

The report of the Habeas Corpus Committee of the Conference of State Court Chief Justices, composed of State Chief Justices Carleton Harris (Arkansas), James S. Holden (Vermont), Oscar R. Knutson (Minnesota); Glenn Parker (Wyoming), Kingsley A. Taft (Ohio), Claude A. Taylor (South Carolina) and Robert B. Williamson (Maine) (Chairman), attached to House Report No. 1892 as exhibit II, stated:

We further recommend that the Conference [of State Court Chief Justices] urge upon the several States the development of sound postconviction procedures to the end that all Federal constitutional issues shall be fully heard and determined within the State courts.

The controversy over whether federal habeas corpus jurisdiction over State prisoners should or should not be vested in a three-judge federal court rather than in a one judge district court (where the Habeas Corpus Act of 1867 originally vested such jurisdiction) tended, for a time, to produce more heat than light and to delay new legislation. See Postconviction Applications, 39 F.R.D. 281 at 285–288.

Resolution of that question by the most recent passage of H.R. 5958 does not attempt to solve all the problems that will arise in the future. Over three years ago, Chief Judge Becker of this Court commented on an earlier version of H.R. 5958 that had been recommended to the Congress by the Judicial Conference in 1963 that contained much, but not all, of the language now found in new legislation. In footnote 48 on page 469 of 33 F.R.D., Chief Judge Becker noted that any legislation in the field of habeas corpus must eventually jump the hurdle of "the Supreme Court's developing notion that it is unconstitutional for Congress to legislate restrictively in the field of habeas corpus." See also the discussion of that notion in connection with Chief Judge Becker's comment on Sanders v. United States, supra, on pages 478 et seq. of 33 F.R.D.

For purposes of this addendum this Court need hold only that nothing in the new amendments to Sections 2244 and 2254 requires that we make any change in our original decision. Much in those amendments and in their legislative history indicates that the Congress was convinced that the rules of decision of the Supreme Court of the United States, as stated in the trilogy, would be better understood and applied if they were codified in statutory form. We expressly

note, however, that this Court does not reach, and therefore reserves judgment, on the constitutional question identified by Chief Judge Becker to which we have made reference.

All active judges of this Court concur in this addendum and the Court en banc direct that it be added to and published as a part of our original en banc opinion.

It is so ordered.

## APPENDIX A

## DRAFT MEMORANDUM ON EXHAUSTION OF STATE REMEDIES AS A PREREQUISITE TO FEDERAL HABEAS CORPUS TO REVIEW STATE CONVICTIONS

*Conference*

United States Court House
Jefferson City, Missouri

April 25, 1966

------------------------------------------------------------------------

*Present*

The Honorable William H. Becker
Chief Judge, United States District Court
Western District of Missouri

The Honorable John W. Oliver
Judge, United States District Court
Western District of Missouri

The Honorable Norman H. Anderson
Attorney General, State of Missouri

Mr. J. Gordon Siddens,
Mr. Howard L. McFadden,
Mr. William A. Peterson,
Mr. John C. Klaffenbach,
Mr. Donald L. Randolph,
Mr. Walter Nowotny,

Assistant Attorneys General

Mr. Granville Collins
Attorney, Fulton, Missouri

Professor Edward H. Hunvald, Jr.
School of Law, University of Missouri

Mr. J. C. Truman,
Clerk, United States District Court
Western District of Missouri

Mr. Duke Ponick, Jr.,
Mr. Michael J. Maloney,
Mr. Lawrence Pelofsky,

Law Clerks,
Western District of Missouri

Generally it was agreed as follows:

1. Where a State convict has applied to the Supreme Court of Missouri for post-conviction Habeas Corpus involving claimed violations of Federal rights and the Supreme Court of Missouri has denied Habeas Corpus without a hearing, the Habeas Corpus proceeding is not deemed to be, in and of itself, an exhaustion of State remedies.

2. Where a State convict has made a post-conviction application for Habeas Corpus to the Supreme Court of Missouri and the Supreme Court of Missouri has granted a hearing and denied the writ on the merits, the convict has exhausted his State post-conviction remedies. (See State v. Goodwin, Mo., 396 S.W.2d 548).

3. When a State convict has litigated in the trial court and presented on direct appeal the precise claim of violation of Federal rights presented in Federal Habeas Corpus and the Supreme Court of Missouri on direct appeal has denied relief on the precise point, the State remedy is exhausted, provided the point is precisely the same and all relevant evidence is in the State court record.

4. Where a State convict has moved under Missouri Criminal Rule 27.26 for relief, claiming violation of Federal constitutional rights and relief has been denied by the trial court and the State convict has failed to appeal, the State convict has not exhausted State post-conviction remedies. This conclusion is reached upon the assumption:

(a) The State convict within one year may secure an appeal under Missouri Criminal Rule 28.07, and

(b) A second motion under Missouri Criminal Rule 27.26 may be filed and an appeal taken from the denial of the second 27.26 motion. (Compare State v. Pickel and Proffit, In Re David Lee Green, State v. Herron, and opinions of the Eighth Circuit Court of Appeals stating that a second 27.26 is available in Missouri; Hooper v. Nash, 323 F.2d 995, Mahurin v. Nash, 321 F.2d 662, and Donnell v. Nash, 323 F.2d 855.)

## STATEMENT OF POLICY OF FEDERAL COURTS

1. The judges of the United States Courts desire a State court record in each post-conviction proceeding on which they can conscientiously deny Habeas Corpus without an evidentiary hearing in cases where the State Courts have denied post-conviction relief.

2. The United States District Court for the Western District of Missouri has adopted, and hopes that the State courts adopt, a procedure in which post-conviction complaints can be fully and, as far as possible, finally adjudicated in one proceeding involving no more than one evidentiary hearing. The object of this is to hear all complaints and simultaneously save the time of the State officers, including the judge, Attorney General, Prosecuting Attorney and lawyers appointed for defendants.

3. As a general rule, it appears that every persistent convict will eventually secure at least one plenary evidentiary post-conviction hearing. The reason for this is that the opinions of the Supreme Court of the United States now hold that an evidentiary hearing is required on the unsupported allegation of facts by a convict indicating a violation of his Federal constitutional rights, even though judicial and other officers may have personal knowledge that the allegations are wholly false.

4. The United States District Courts would prefer that this one plenary evidentiary hearing be accorded State convicts by State courts. However, if the State courts do not accord the State convict the evidentiary hearing on one or more of his claims of violation of Federal constitutional rights, then the United States District Courts are obligated to accord the hearing to the convict.

5. The procedure now followed in the United States District Court for the Western District of Missouri under Section 2255 to review post-conviction complaints of persons convicted by the United States District Court for the Western District of Missouri is substantially as follows:

(a) Questionnaire forms for the filing of motions to vacate under Section 2255 must be used under order of Court. These forms are adapted from those devised by Judge Hubert Will of the Northern District of Illinois (appearing in 33 F.R.D. 391). The reason for using the forms is to save the judges' time and to secure immediately the information necessary to determine whether or not an order to show cause should be issued. The use of these forms has not resulted in an avalanche of post-conviction complaints which would not have been filed except for the form, and has materially saved the time of the judges.

(b) These questionnaire forms of motion are examined to determine if an order to show cause should be issued. In making this determination, the motions are read liberally and with imagination, as suggested in United States v. Sanders, 373 U.S. 1, 83 S.Ct. 1068. To deny the motions because the language is not technically apt or the facts stated with precision simply results in a subsequent motion being filed, multiplying the work of the judge.

(c) If it is determined that an order to show cause should be issued, provisions are made in the order for securing response and a traverse. (Sometimes counsel is appointed for the convict to assist him in drafting the proper motion, but in the past these instances have been rare. Sometime counsel is appointed at the time the order to show cause is issued.)

(d) The order to show cause, the response and traverse are examined to determine whether an evidentiary hearing is required or is desirable.

(e) If it is determined that an evidentiary hearing is to be held, and counsel has not been previously appointed, counsel is ordinarily appointed at this point in order that the *Cortez* procedure may be effectively employed. (32 F.R.D. 391).

(f) After the appointment of counsel and after an evidentiary hearing is deemed to be required or desirable, an order is issued to the District Attorney and to counsel for the petitioner to confer and prepare a stipulation of uncontroverted facts, a stipulation of controverted issues with special directions to counsel to include in the stipulation all possible claims of violations of Federal rights unless the petitioner formally renounces one or more of them. (If a convict undertakes to renounce a potential claim of violation of Federal rights, the renunciation should be made in writing, signed by the convict. The convict should be examined at the evidentiary hearing about whether or not he did understand what he was doing and voluntarily waive any such claim or claims.)

(g) At this point we hold one plenary evidentiary hearing on all issues with the assistance of counsel and in keeping with the principles of the trilogy and in particular Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745.

(h) After all evidence has been heard, the District Court in a memorandum opinion makes precise findings of fact on all material issues. This is deemed to be absolutely necessary in order to foreclose continued litigation of the same matters.

(i) In the memorandum, the Judge includes a judgment based upon stated conclusions of law and either granting or denying the relief. If relief is denied, an application to appeal in *forma pauperis* is made and is allowed by the Court in practically all cases.

APPENDIX B

HABEAS CORPUS ACT

Public Law 89–711

89th Congress, H.R. 5958

November 2, 1966

## AN ACT

Relating to applications for writs of habeas corpus by persons in custody pursuant to judgments of State courts.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 2244 of title 28, United States Code, is amended (a) by inserting at the beginning of the text thereof the subsection designation "(a)", (b) by striking out of such section the words ", or of any State," and (c) by inserting in such section at the end thereof two additional subsections to read as follows:

"(b) When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

"(c) In a habeas corpus proceeding brought in behalf of a person in custody pursuant to the judgment of a State court, a prior judgment of the Supreme Court of the United States on an appeal or review by a writ of certiorari at the instance of the prisoner of the decision of such State court, shall be conclusive as to all issues of fact or law with respect to an asserted denial of a Federal right which constitutes ground for discharge in a habeas corpus proceeding, actually adjudicated by the Supreme Court therein, unless the applicant for the writ of habeas corpus shall plead and the court shall find the existence of a material and controlling fact which did not appear in the record of the proceeding in the Supreme Court and the court shall further find that the applicant for the writ of habeas corpus could not have caused such fact to appear in such record by the exercise of reasonable diligence."

Sec. 2. Section 2254 of title 28, United States Code is amended—

(a) by amending the catchline of the section to read as follows:

**"§ 2254. State custody; remedies in Federal courts."**

(b) by inserting in such section, immediately after the catchline thereof, the following new subsection:

"(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."; and

(c) by inserting at the beginning of the two paragraphs thereof existing on the day preceding the date of enactment of this Act the subsection designations "(b)" and "(c)", respectively; and

(d) by inserting immediately after such paragraphs the following new subsections "(d)", "(e)", and "(f)";

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

"(1) that the merits of the factual dispute were not resolved in the State court hearing;

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

"(3) that the material facts were not adequately developed at the State court hearing;

"(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

"(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

"(7) that the applicant was otherwise denied due process of law in the State court proceeding;

"(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part

of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

"(e) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

"(f) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding."

SEC. 3. Item 2254 in the analysis of chapter 153 of title 28, United States Code, immediately preceding section 2241 thereof, is amended to read as follows:

"Sec. 2254. State custody; remedies in Federal courts."

Approved November 2, 1966