**STATE of Missouri, Respondent,**

v.

**Robert PICKEL and Lewis Proffit, Appellants.**

**No. 50303.**

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

---

Thomas F. Eagleton, Atty. Gen., Louis C. DeFeo, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

No attorney for appellant.

HOLLINGSWORTH, Presiding Judge.

Defendants, imprisoned in the state penitentiary under sentences imposed in the Circuit Court of Jasper County, Missouri, following their pleas of guilty to three allegedly jointly committed felonies, seek by motion filed under the provisions of S.Ct. Rule 27.26, V.A.M.R., to vacate and set aside the sentences thus imposed. Upon examination of the motion to vacate and set aside said sentences and the files and records in said cases, the trial court denied said motion without hearing, from which order defendants have appealed. Jurisdiction of said appeal is vested in this court. S.Ct. Rules 27.26 and 28.03.

The transcripts (one in each of the six cases) herein filed on appeal show that on the 4th day of January, 1960, the trial court appointed counsel for each of the defendants and that on said date they were formally arraigned and each entered pleas of guilty to the following crimes:

(1) burglary of the dwelling house of Guy Waring and Georgia Waring in Jasper County on or about the 19th day of November, 1959, and the stealing therefrom of personalty owned by said Warings of the aggregate value of $2,000;

(2) burglary of the office building of one C. J. Bulger in Jasper County on or about the 23rd day of November, 1959, and the stealing therefrom of personalty owned by said Bulger of the aggregate value of $64.60; and

(3) stealing from C. J. Bulger in Jasper County on or about the 23rd day of November, 1959, a 1953 Plymouth automobile of the value of $495.

Sentencing of each defendant was deferred until January 18, 1960. On that date defendant Pickel appeared in person and with his court-appointed attorney, Mr. Jack Burress, and defendant Proffit appeared in person and with his court-appointed attorney, Mr. Dalton DeShazer. Each defendant was granted allocution and each was sentenced to imprisonment for a term of four years for burglary and four years for stealing in the Waring case, to run consecutively, and to be reduced by 54 days for the time spent by each defendant in jail prior to sentence. Each was further sentenced to imprisonment in the penitentiary for a term of four years for burglary and four years for stealing in the Bulger office building case, each four-year sentence to run consecutively and to commence at the expiration of the sentence imposed upon each defendant in the Waring case. Each was also sentenced for the stealing of Bulger's Plymouth automobile to imprisonment for a term of five years, said sentence to run concurrently with the sentences consecutively imposed upon him in the Bulger burglary and stealing case.

The motion to vacate and set aside these sentences is based primarily upon the following three contentions:

(1) That certain armed policemen of Oklahoma City, Oklahoma, on the night of November 25, 1959, without any warrant for the arrest of defendants, forcibly entered a home in said city in which defendants were sleeping and forcibly and unlawfully ar-

rested defendants and unlawfully searched said home and seized personalty therein for use in evidence against defendants, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, § 15, of the Constitution of Missouri, V.A.M.S.; and that in fact no warrant was issued for the arrest of defendants or either of them until December 29, 1959.

(2) That defendants were denied the benefit of counsel in their preliminary hearing and arraignment, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, § 18(a), of the Constitution of Missouri.

(3) That the pleas of guilty entered by defendants were obtained by coercion, in violation of the Fourteenth Amendment to the Constitution of the United States.

The motion further alleges that following arrest without warrant by the Oklahoma police officers defendants were taken to an Oklahoma jail and there informed that they were wanted by the sheriff's office in Joplin, Missouri, on a charge of burglary, the commission of which defendants denied and that they then and there waived extradition to Joplin, Missouri, "so as to prove their innocence." The motion further alleges that even though the court did appoint counsel to represent them on the day of their arraignment, January 4, 1960, defendants nevertheless were not allowed to consult with counsel except for approximately ten minutes just before the court pronounced sentence and judgment on January 18, 1960.

Certain duly certified "Supplemental Transcript(s) on Appeal", filed in this court on January 14, 1964, contain a joint affidavit of defendants in which they (quoting verbatim) state:

"On or about the 30th day of November 1959 affiants were prisoners of the Jasper County Sheriff's Department, affiants were taken into a room of the foresaid department where they were confronted by a Mr. Paul Archer, who is a member of the Jasper County Sheriff's Department. (Deputy)

"This officer began questioning affiants about some burglaries that had according to this officer been committed in Jasper County, Missouri. Affiants denied any knowledge whatsoever of any burglaries, and that they did not wish to be questioned about any. That they wanted to call a lawyer. Mr. Archer informed affiants that they would call a lawyer when he was ready to let them and not until then. There was two other large individuals (male) in the room who had on their shirts, law enforcement badges. Their names are unknown to affiants. After a period of approximately 30 minutes steady questioning by Mr. Archer, there was given to affiants a beating with rubber truncheons. Affiant Proffit tried to defend himself and for his efforts he will carry to his grave the scars upon his head that were inflicted by a Mr. Paul Archer with a gun butt, (pistol). Affiants were returned to jail and for the next two weeks these interrogations were carried out on nearly every night, and at every time your affiants requested that they be allowed to call a lawyer. This was consistently denied affiants by Mr. Archer. At the end of one of the interrogations, affiants were told that if they would cooperate and answer the questions and admit their guilt, that they would be left alone and that the Sheriff's office would see that the Judge was lenient.

"After about a three day interval, affiants were taken again to a room of the Sheriff's Department, and were there confronted with two men and two women. One of the men was Mr. Paul Archer. The other identified himself as being from the Juvenile Department of Jasper County. One of the

women was a Mrs. Doris Jean Kriger, who is the sister of affiant Proffit and is a personal 'friend' of affiant Pickel. The other woman identified herself as being from the County Welfare Department. Mrs. Kriger had with her a little girl of the then approximate age of 3 or 4 years. This little girl was the daughter of Mrs. Kriger, who was separated from her husband and who was drawing welfare from the County and State Welfare Department for the support of herself and her little daughter. Affiants noticed that Mrs. Kriger had been crying and affiant Proffit asked her what was the matter. Mrs. Kriger said, 'they are going to take my little girl away from me and * * * PUT HER IN A HOME, and they have made me a witness for the state and have told me that they can have me arrested and put me in prison.' Affiants then demanded from Mr. Archer an explanation of this. Mr. Archer said, 'We know that you two have been hanging out around Mrs. Kriger's house and that you are as guilty as you can be of this. We have found some things in Mrs. Kriger's home that we know you took from Mr. Guy Waring's home when you broke into it.' Affiants plainly told Mr. Archer this was a lie and to quit bothering Mrs. Kriger. Then Mr. Archer explained that all the Sheriff's office had to do was to file a complaint with the Welfare Department and the Juvenile Department and that the little girl would definitely be taken from Mrs. Kriger, and that the Court did not approve of a child being raised in a home where ex-convicts hung out, and that the State did not cater to paying out the taxpayers money to such a case as Mrs. Kriger's but if the affiants would just quit lying and tell the truth and make a statement admitting their guilt that the Sheriff's office would not file a complaint and that they would let the little girl stay with its mother, and allow Mrs. Kriger to have another chance and that the Welfare Department and Juvenile Officer was willing to give Mrs. Kriger a chance to prove she could be a good mother to the little girl. That he had explained that Mrs. Kriger had been subjected to the influence of a couple of felons who should have the decency to keep Mrs. Kriger out of this. That all they had to do was act like men and take their punishment for stealing other people's property, and that as far as calling a lawyer that the affiants had no money and that the state did not have to furnish anyone with a lawyer except in a capitol offense, but to not worry that if they would come clean and admit their guilt that he (Mr. Archer) would talk to the Judge and recommend that a light sentence be given in exchange for a little cooperation. That he and the Judge was good friends. Affiants were then returned to their cells, and the following night Mr. Archer again called them to his office where an oral statement was given by affiants, same being recorded on a tape recorder. * * *.''

The truth or falsity of the foregoing charges obviously have a direct bearing upon the merits of defendants' motion and defendants are entitled to a full hearing thereon as provided in Rule 27.26. Consequently, the order denying the motion without hearing must be set aside, to the end that the trial court may cause notice of said motion to be served on the prosecuting attorney and the motion to be heard on its merits; that defendants be granted writs of habeas corpus ad testificandum as prayed in the motion; and that they have such other process as may be necessary to a full hearing of the motion on the merits. As stated in State v. Herron, Mo., 376 S.W.2d 192, when charges such as are here made, and are not on their face so patently without foundation as conclusively to demonstrate their want of merit, they must be heard by the trial court in accordance with

Rule 27.26 and the proceedings and testimony taken at the hearing preserved for appellate review. See also State v. Moreland, Mo., 351 S.W.2d 33, 35[1], [2, 3], [4].

The cause is reversed and remanded for further proceedings consistent and in accordance with the views herein, and more fully in State v. Herron, supra, expressed.

All concur.