**Edgar HOLLAND, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.**

**Civ. A. No. 1191.**

United States District Court,
W. D. Missouri, C. D.

March 11, 1970.

As Amended May 27, 1970.

Granville Collins, Columbia, Mo., for petitioner.

Robert Jones, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## AMENDED JUDGMENT DENYING PETITION FOR HABEAS CORPUS

BECKER, Chief Judge.

### Introduction

This is a postconviction proceeding to review a state court conviction of petitioner on a charge of murder of his wife over 25 years ago. Before his trial and direct appeal to the state Supreme Court, the defendant was a reasonably affluent white business man, suspected of the brutal murder of his wife and mother-in-law. He was and still is able to employ unusually skilled trial counsel.

The search for evidence and the evidentiary hearings involved many detailed claims including claims of inadequate assistance of counsel and of alleged wrongful search and seizure, among others. Because of the dimness of memories, difficulties in securing old files and misunderstanding by the original counsel for respondent of the state's duty to produce evidence, this has been a protracted case.

After the original hearing it was concluded that immediate decision would not be appropriate in the absence of additional evidence. This decision was reached because of the absence of evidence which would normally exist in a case of this type, but which apparently had not yet been adduced. Two additional evidentiary hearings were required before a satisfactory record could be made. Now all available evidence and briefs have been submitted.

### Petitioner's Claim for Relief

Petitioner, a state convict confined in the Missouri State Penitentiary, filed in this Court on April 13, 1967, a petition for a writ of habeas corpus to invalidate his conviction of first degree murder by the Circuit Court of Pettis County, Missouri. The conviction was affirmed on appeal by the Supreme Court of Missouri. State v. Holland, 354 Mo. 527, 189 S.W.2d 989. Leave to proceed in forma pauperis was granted and an order to show cause why the requested relief should not be granted was issued.

Petitioner states that he plead not guilty to a charge of first degree murder in the Circuit Court of Pettis County; that he was found guilty of the charge by a jury and on February 3, 1945, was sentenced to a term of life imprisonment upon that conviction; that he appealed from the judgment of conviction and imposition of sentence to the Missouri Supreme Court; that the Missouri Supreme Court affirmed the judgment and sentence (State v. Holland, *supra*); that he has previously petitioned for habeas corpus in this Court which was denied on May 5, 1950; that he filed a subsequent habeas corpus petition in this Court which petition was dismissed without prejudice for failure of petitioner to exhaust his available state remedies (see Holland v. Steinhauser, 242 F.Supp. 629, Central Division); that thereafter petitioner filed a motion under Missouri Criminal Rule 27.26, V.A.M.R., in the trial court, which motion was denied on May 28, 1966, and the denial was affirmed on appeal by the Missouri Supreme Court on March 13, 1967 (State v. Holland, Mo., 412 S.W.2d 184); and that he was represented by counsel at his arraignment and plea, at his trial, at his sentencing, on appeal and "as to some" of his postconviction motions and petitions.

Petitioner states the following as grounds for his allegation that his conviction was secured in violation of his federal constitutional rights:

(1) that inadmissible admissions which were used against him at this trial were unlawfully obtained from petitioner in the period dating from May 16 to May 20, 1944, when petitioner was taken by the Missouri Highway Patrol to view the bodies of the deceased victims and to the purported scene of the crime;

(2) that he was denied a speedy trial;

(3) that he was deprived of the effective assistance of adequate counsel in that his counsel inadequately and ineffectively represented him at his trial;

(4) that the prosecuting attorney improperly commented on petitioner's failure to testify at his trial;

(5) that petitioner was illegally arrested and that his request for dismissal of the indictment was denied;

(6) that the prosecution knowingly used perjured testimony against petitioner at his trial, and knowingly suppressed evidence which was favorable to petitioner;

(7) that evidence which was obtained by means of an illegal search and seizure was admitted in evidence against petitioner at his trial; and

(8) that petitioner was denied his right to trial by a fair and impartial jury.

Because the pleadings in the case presented substantial issues of fact (concerning occurrences nearly 25 years ago) and important questions of law, three plenary evidentiary hearings on such issues were held herein. After considering all the evidence, including the oral testimony, deposition and documents, the files and records herein and the undisputed state court records, the following findings of facts and conclusions of law are made:

*Findings of Fact and Conclusions of Law*

■ The official report of the Missouri Supreme Court's affirmance of the denial of petitioner's 27.26 motion, State v. Holland, Mo., 412 S.W.2d 184, shows that the following contentions were raised before the Missouri Supreme Court: (1) that his home was searched and certain evidence was thereby seized and used against him without his consent; (2) "[that] his conviction was substantially based upon admissions made while he was being held incommunicado and during a period of delay in taking him before a judge under circumstances that were inherently coercive"; and (3) that the prosecutor commented to the jury on petitioner's failure to testify. State

remedies were thereby exhausted with regard to those contentions, but currently available state remedies were not exhausted with regard to the additional contentions made here. Although the decision of the Missouri Supreme Court was handed down prior to the date of Missouri's newer and more liberalized Criminal Rule 27.26, it postdated the enunciation of current federal standards by the United States Supreme Court in the trilogy of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837, and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, and the recognition by the Missouri Supreme Court of the applicability of such standards in State v. Pickel, Mo., 376 S.W.2d 181, and State v. Herron, Mo., 376 S.W.2d 192. Since those additional contentions raised valid constitutional questions of law and subordinate issues of fact, it was determined that petitioner was entitled to a decision on the merits in this Court because of the exceptional circumstances existing. Because of the extraordinarily long time which had elapsed since the state court conviction discretion and power was exercised to hear evidence on and to determine the other issues sought to be raised by petitioner in the case at bar. Memories had already become so dim that there was great danger the circumstances could no longer be reconstructed by evidence if petitioner were required to exhaust fully his state remedies. The ruling was based on authorities which hold that the federal district court has broad discretion to hear a habeas corpus petition even though state remedies have not been totally exhausted if exceptional circumstances exist which warrant a hearing on the merits to protect the rights of the prisoner and to do justice. Fay v. Noia, *supra*; Clarke v. Grimes (C.A. 5) 374 F.2d 550; Rhinehart v. State (C.A. 4) 344 F.2d 114; United States ex rel. Spero v. McKendrick (S.D. N.Y.) 266 F.Supp. 718. In this respect this case is the exception and not the rule. See Baines v. Swenson (C.A. 8)

384 F.2d 621; State v. Stidham, Mo., 415 S.W.2d 297.

On April 16–17, 1944, the mutilated bodies of two females were found in the Lake of the Ozarks. Both had been beheaded, and the right leg of one of the bodies had been removed in an effort to prevent identification. The bodies were subsequently removed to Columbia, Missouri, where adequate pathological services were available. The bodies remained unidentified for several weeks. Finally they were identified by the investigating officers as the wife and mother-in-law of petitioner.

On May 16, 1944, members of the Missouri State Highway Patrol went to the farm house of the petitioner. There they asked petitioner the whereabouts of his wife and mother-in-law. Petitioner suggested that they were away on a trip. Thereafter, petitioner voluntarily agreed to accompany the patrolmen to Columbia, for the purpose of identifying the bodies as those of his wife and mother-in-law. After petitioner had viewed the bodies in Columbia, he voluntarily remained with the highway patrolmen, who induced petitioner to accompany them to the Lake of the Ozarks area where the bodies were found. Then petitioner on request accompanied the officers to Jefferson City. This period of intermittent travel and questioning lasted from May 16 to May 20, during which time petitioner and the patrolmen spent two nights in a motel adjacent to the Lake. Finally petitioner was arrested and placed in the Cole County Jail at Jefferson City for one night. Up to the time of his arrest petitioner pretended to be assisting in the investigation to create an appearance of innocence and to avoid suspicion of guilt. This conduct was the basis of the trial strategy to offer no objection to the fruits of a warrantless search of petitioner's home and premises with written consent of petitioner.

Petitioner testified that he may have paid for his own food and lodging during the trip with the patrolmen because he had the funds to do so, but that he was under the impression during this period

of time that he was in the custody of the highway patrol and that he was under arrest. At the end of the four-day period, petitioner was taken to Sedalia, Missouri, under arrest. There he was taken before a Police Court Judge and charged with the murder of Mollie Holland, his wife.

Meantime, during the four-day period in which petitioner was being intermittently interrogated by the highway patrol, extensive warrantless searches of his home and the surrounding premises were made by the highway patrol with the voluntary uncoerced consent of petitioner. With the voluntary consent of petitioner, further searches were made of petitioner's farm home and premises after the charge of murder had been officially lodged on May 20, 1944. In these searches numerous objects were removed, blood scrapings were taken, ashes sifted, a ceiling was torn up, and the kitchen walls were x-rayed. Burned clothing, two chairs, flooring and other articles were seized and used as evidence against him at his subsequent trial.

The murder complaint filed in the Police Court of Pettis County against the petitioner on May 20, 1944, Cause No. 19291, was dismissed on June 20, 1944. On the same date a murder complaint was filed against petitioner in a Sedalia, Missouri, Justice of the Peace Court. A preliminary hearing was held June 29, 1944, to July 1, 1944. At the conclusion of the preliminary hearing the petitioner was bound over to the Circuit Court of Pettis County in Cause No. 19303. Petitioner was charged by information with murder. This information was filed in the Circuit Court of Pettis County. The case was set for trial on October 23, 1944.

Thereafter, on October 10, 1944, the State moved for continuance. On October 13, 1944, this motion was denied. The petitioner was thereafter present and ready for trial on October 23, 1944; nevertheless, the prosecution dismissed the murder charge without prejudice because (as the then-prosecuting attorney Leo J. Harned testified at this hearing) the prospective jury panel and witnesses contained friends of the accused and because of the temporary unavailability of a witness who could identify the fingerprints of Mollie Holland. On the same date, another murder complaint was filed against petitioner and petitioner was rearrested. A second preliminary hearing was held November 15, 1944. At the conclusion of the preliminary hearing the petitioner was again bound over to the Circuit Court of Pettis County. An information charging petitioner with the murder of petitioner's wife, Mollie Mattie Holland, was filed January 1, 1945, in Cause No. 19348. Petitioner's trial lasted from January 22 through January 26, 1945, and ended with the judgment of conviction of petitioner and the imposition of a sentence of life imprisonment. Petitioner was defended by his able employed counsel, Fred F. Wesner, Esquire, a skilled practicing trial lawyer.

### The Admissions of Petitioner

Petitioner's first contention is that his own statements which were admitted against him at his trial had been obtained from him under duress by the Missouri State Highway Patrol during the period May 16–20, 1944, when he accompanied them to the Lake of the Ozarks, Columbia, Jefferson City and Sedalia, where he was arrested and jailed. In support of his contention, petitioner cites the cases of Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801; Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242, and Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The contention is not supported by the evidence or the cited authorities.

In Watts v. Indiana, *supra*, relays of officers questioned the accused for a six-day period, from afternoon to the early morning hours. The accused was also driven to various locations by the police and was not given a prompt hearing before a magistrate. In *Haynes*, the defendant was held five to seven days

and was denied permission to call friends or a lawyer. The Supreme Court held that the use of his confession given during that time violated the 14th Amendment even though there was no claim by the defendant that he was physically abused, deprived of rest or food, or uninterruptedly questioned for long periods of time. In *Spano,* the accused was subjected to protracted interrogation beginning in early evening and lasting into the early morning hours, and his requests to see an attorney were denied.

In *Blackburn,* the defendant was questioned for eight or nine hours in a tiny room filled with police officers and the confession was composed by a deputy sheriff rather than by defendant. And in *Rogers,* the defendant was questioned for a period of six hours and confessed when the sheriff threatened to have his wife taken into custody. The circumstances of the case at bar are not comparable.

The circumstances under which petitioner in this case was interrogated differ from the circumstances of the cases on which he relies in that in the case at bar the petitioner was not in custody, but rather had voluntarily accompanied his interrogators in an apparent effort to assist in solving the crimes and in that no degree of coercion was employed by the interrogators to obtain the statements made by petitioner. Indeed, the statements made and admitted in evidence at the trial of petitioner were made by petitioner in a voluntary effort to avoid suspicion rather than as a result of anything defined by the standards applicable to this case as "coercive". The evidence does not warrant a finding that petitioner's admissions were involuntary. Further, the evidence does not show that petitioner asked for counsel or to contact friends during this period nor that such was denied him.[1]

1. Petitioner has quoted the following example of the questioning techniques employed by the highway patrol to justify his characterization of the statements he made as "involuntary":

"CAPTAIN HANSEN: You don't read much. The first thing you did in the restaurant this morning was grab a newspaper and looked at it.

"EDGAR HOLLAND: Just the weather.

"CAPTAIN HANSEN: You read the story about the women thrown in the Lake. I watched you.

"EDGAR HOLLAND: Sure, it is interesting to me.

"CAPTAIN SHAW: Why was it interesting?

"CAPTAIN HANSEN: You haven't answered his question yet.

"EDGAR HOLLAND:

"CAPTAIN HANSEN: Where did you first hear of the bodies down at the Lake?

"CAPTAIN SHAW: Did you hear about it when we first put it out?

"EDGAR HOLLAND: I don't know.

"(some questions and answers are here omitted)

"CAPTAIN SHAW: Well, you knew about it for some while?

"EDGAR HOLLAND: Just hear or see it in the paper but never read it.

"CAPTAIN SHAW: Why was it more intersting to you this morning?

"CAPTAIN HANSEN: You are one of very few men over the country who have a wife and mother-in-law missing who answer the description of the bodies being held at Columbia, yet you don't show any interest.

"EDGAR HOLLAND: That was after I had been up there. Wouldn't that make a person be interested?

"CAPTAIN HANSEN: Are you trying to help us?

EDGAR HOLLAND: I would think so.

"CAPTAIN SHAW: You think you have a method of identifying your wife. Why won't you tell us how you would go about it?

"EDGAR HOLLAND: You people are not helping me.

"CAPTAIN HANSEN: We are going to help you pretty soon.

"EDGAR HOLLAND: What do you mean?

"CAPTAIN HANSEN: We are going to help you.

"EDGAR HOLLAND: How?

"CAPTAIN HANSEN: Help you to identify your wife.

"CAPTAIN SHAW: Don't you think we have been more help to you than you have been to us?

"EDGAR HOLLAND: No.

"CAPTAIN HANSEN: If you are sincere in wanting to locate your wife and mother-in-law whom you think so much of you would tell us how you would go about identifying the bodies?

*The Search of Petitioner's Farm Home and Premises*

The search of petitioner's farm home conducted by the Missouri State Highway Patrol is characterized by petitioner as an illegal search. The evidence seized and admitted at the trial is alleged to be incident to the alleged illegal search. Petitioner contends that the state obtained nearly all of the evidence upon which petitioner was convicted in the search of his farm home and premises. Otherwise, petitioner states, "They would have no evidence of the place where the crime occurred. They would have little more than statements made by the petitioner, some of which were made under coercive circumstances and should have been excluded." Therefore, petitioner states that the search did not result in "harmless error" within the rule of Fahy

"CAPTAIN SHAW: How would you do it?

"EDGAR HOLLAND: I will just tell you.

"CAPTAIN SHAW: Go ahead.

"EDGAR HOLLAND: Well, I just bet I can do it.

"CAPTAIN SHAW: You were going to tell us. Why did you change your mind?

"EDGAR HOLLAND: I'll just bet $1,-000 I could do it to your satisfaction.

"CAPTAIN SHAW: How?

"EDGAR HOLLAND: I will take care of that.

"CAPTAIN SHAW: How are you going to take care of it?

"EDGAR HOLLAND: I would go into it where I would absolutely know.

"CAPTAIN SHAW: How would you do it? Your attitude is bad.

"EDGAR HOLLAND: No it isn't.

"CAPTAIN SHAW: Yes it is or you would tell us.

"This, petitioner states, is the method by which the Highway Patrol secured petitioner's 'suggestion' that certain doctors be called in. The questioning continued.

"(some questions and answers are here omitted)

"CAPTAIN SHAW: Do you feel that you are under suspicion?

"EDGAR HOLLAND: No.

"CAPTAIN HANSEN: What is your idea as to why you are here?

"EDGAR HOLLAND: I've got livestock up there without water—a lot of calves. I've got a boy out running a tractor and disc and me away from home. I have been pretty busy.

"CAPTAIN SHAW: Do you think anyone suspicions you?

"EDGAR HOLLAND: No. I didn't say that.

"CAPTAIN HANSEN: You didn't answer my question. Why do you think you are here?

"EDGAR HOLLAND: I suppose to take me over there. I supposed you would take me on home before this. It is getting late.

"(some questions and answers are here omitted)

"CAPTAIN SHAW: Did you look those bodies over close?

"EDGAR HOLLAND: Yes. Pretty close.

"CAPTAIN SHAW: Where the leg was severed?

"EDGAR HOLLAND: I was looking at their hands and arms and legs, the size of the bodies. I looked it over I thought pretty close.

"CAPTAIN SHAW: How do you think the heads were cut off?

"EDGAR HOLLAND: I never noticed it.

"CAPTAIN SHAW: I noticed you were looking at it. Everybody who has looked at those bodies has had an opinion about how the heads were cut off.

"EDGAR HOLLAND: I didn't.

"CAPTAIN SHAW: You are the only person that hasn't made a remark about it.

"EDGAR HOLLAND: I never gave it a thought.

"CAPTAIN SHAW: Did you notice where the leg was cut off?

'EDGAR HOLLAND: Just noticed that it was off.

"CAPTAIN SHAW: Did Mrs. Fairfax have a running sore on her leg?

"EDGAR HOLLAND: I don't know.

"CAPTAIN SHAW: Did she have a sore on her leg?

"EDGAR HOLLAND: Not that I know of.

"CAPTAIN SHAW: Are you sure of that?"

No coercion is apparent, however, from the colloquy, and the only reasonable conclusion therefrom is that petitioner voluntarily cooperated in the questioning and resultingly made inadvertent admissions. Neither Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, nor Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is applicable. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171.

■ It is conceded by the state that the search was accomplished by members of the State Highway Patrol without a warrant. It is well-established, however, that three exceptions exist to the rule that a search must be conducted under the authority of a warrant. Warrantless searches may be made (1) incidental to arrest, (2) of a moveable vehicle where there is probable cause and not time enough to obtain a warrant, and (3) when the defendant has voluntarily consented to searches. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The state seeks to bring the search in this case under the third exception by virtue of a written consent which was signed by the petitioner. At the hearing in this cause, petitioner testified that the signature thereon "looked like" his, although he stated that he had never signed such a consent, though he had signed a blank sheet of paper, purportedly in connection with a "statement" given on May 16, 1944. The state has proved that the defendant voluntarily consented in writing to the search without a warrant, which could have been secured on the available evidence. Further, it appears that the consent was voluntarily given by the petitioner without any coercion.

■ Petitioner further contests the legality of the search (and the admission of the evidence seized in the search) by stating that the search by the State Highway Patrol, even if consented to by the petitioner, was still illegal under Section 8362, RSMo 1939, which expressly denied the power of search to members of the State Highway Patrol. That statute read as follows:

"The members of the [highway] patrol shall not have the right or power of search nor shall they have the right or power of seizure except to take from any person under arrest or about to be arrested deadly or dangerous weapons in the possession of such person."

The consent to the search by petitioner renders the state statute inapplicable. Further the petitioner does not raise any issue of the violation of federally protected rights because under federal standards a search resulting from an uncoerced consent is recognized as constitutionally permissible. This contention, therefore, is deemed to be without merit. Further, it is noted that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, 84 A.L.R.2d 933, is not retroactive to 1945. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

■ While not admitting the giving of consent, the petitioner contends that the consent was given under coercive circumstances and therefore cannot constitute an intelligent waiver of his federally protected rights under applicable federal standards. In support of this position, however, petitioner cites substantially the same circumstances that were advanced in support of the contention that oral statements were illegally obtained from him. Here again the circumstances are found not to be coercive and the consent is found to have been intelligently, understandingly and voluntarily given.

*The Alleged Denial of a Speedy Trial*

■ Petitioner next asserts that he was denied a speedy trial. Petitioner was first charged with first degree murder of his wife in the Justice of the Peace Court in Pettis County on May 20, 1944. The case was set for jury trial in the Circuit Court on October 23, 1944. On October 10, 1944, the state moved for a continuance because of the absence of an identification witness.[2] On October 13, 1944, the motion for continuance was de-

2. In the hearing held in this Court, state prosecutor Harned testified that he asked for the continuance because of the temporary unavailability of a witness who could identify Mollie Holland's fingerprints as a result of a sample having been taken when she did "war work in Dallas."

nied. Petitioner then was present with counsel, and announced ready for trial on October 23, 1944, but the state moved for dismissal of the charges against him. Later that day after dismissal, the state re-filed the same charge of first degree murder against petitioner and petitioner was re-arrested on the same afternoon. Petitioner rests his contention upon the following language of Commonwealth v. Thomas, 353 Mass. 429, 233 N.E.2d 25:

> "It is regrettable that a prosecutor should interpret the power of his office so as to set himself up as an appellate authority to overrule the decision of a judge. In effect, what the prosecutor did was tantamount to saying to the judge, 'Either you grant the continuance I request or I will take the case out of your hands.'"

The *Thomas* case is distinguishable from the case at bar, however, in that, (1) in this case, the trial was still held within a reasonable time; (2) petitioner herein, furthermore, has made no showing that he was prejudiced in any respect by the delay; and (3) the prosecution in this case had reasonable cause for its dismissal and prompt refiling of the charge. Because of the short time interval in question the prosecution should not be frustrated because it took longer to gather evidence than would ordinarily be expected. Further, as respondent argues, the time within which petitioner was brought to trial was within the limits prescribed by the applicable Missouri Statute, Section 545.890, RSMo 1959, V.A.M.S., which reads as follows:

> "If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the

want of time to try the cause at such second term." [3]

It is true, as petitioner argues, that the state statute does not control the determination whether, under federal standards, the petitioner was brought to trial within a reasonable time. In the recent Supreme Court case of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, it was held that a violation of the right to speedy trial occurred when the State of Texas waited six years from the time of indictment (while the petitioner therein was in a federal prison) to commence trial. The magnitude of the delay in this case does not remotely approach that in *Smith*. See also Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. In the latter case the case was continued twice and then the court granted the prosecution's motion to take a nolle prosequi over the defendant's objection. Those facts distinguish *Klopfer* from the case at bar, in which no prior continuances had been granted when the case was dismissed in October 1944.

Fourth, petitioner contends that assistance of his counsel was not effective. Specifically, petitioner charges that his counsel "made no objection to the testimony of the patrolmen relating to the damaging statements made to them during the five days he was held by them"; that he failed to object to the products of the search conducted by the highway patrol May 16 to 20; and that he failed to object to the prosecutor's comment on petitioner's failure to testify. Petitioner also states that he wanted to testify on his own defense, but was not permitted by his counsel to do so; that his counsel failed to investigate and learn the facts which would have buttressed the petitioner's defense; and that petitioner's counsel failed and refused to object to the retention, or otherwise peremptorily to challenge, a juror who bore hard feelings toward petitioner. On the basis of the earlier findings concerning

---

3. The statute has been applied to those accused by information as well as by indictment. State v. Schyhart, Mo., 199 S.W. 205.

voluntariness of petitioner's statements objections to admission of the statements made to the highway patrol during the interrogation of May 16 to 20 would have been properly overruled. This is also true of any objections which might have been made to the admission in evidence of items seized from petitioner's house. It was further, in view of the lack of merit of any objection, the strategy of petitioner's counsel not to emphasize admissible evidence by the interposition of objections. This is apparent from the records and testimony in which petitioner's counsel specifically stated that no objection was made to admission in evidence of the products of the search and seizure.

The record of the trial also indicates that the text of the prosecutor's remark was "did he ever deny being there, no, not one word of testimony." However, Johnson v. New Jersey, *supra*, holds that the rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, which condemns such a comment, is not retroactive and thus it is inapplicable in the case at bar.

On the question of petitioner's failure to testify, the record indicates that a previous conviction [4] furnished an appropriate reason for counsel to have advised petitioner not to testify in his own behalf. If petitioner had testified a prior conviction of petitioner for bank robbery could have been shown to impeach the petitioner's credibility under Missouri jurisprudence.

Further, no record has been made on the petition here in respect of what additional information and evidence counsel should and could have obtained in defense of petitioner. Nothing from the testimony rendered at the evidentiary hearing on the records (or the pleadings in this case) shows any prospect of other evidence which counsel might have offered except petitioner's factual denials of guilt. As a matter of trial strategy

silence was chosen in the exercise of a fundamental constitutional right.

Petitioner's final contention on this point is addressed to the failure to challenge juror Ove Gorrell. Petitioner states that he had a prior business dealing with Gorrell and therefore that Gorrell "lied" when on voir dire questioning he replied negatively to an interrogatory asking whether he had had any business dealings with defendant. Petitioner states that he told his attorney that the response was not true; that there had been a previous business dealing between him and Gorrell; that there were hard feelings between them and that he did not want Gorrell to sit on the jury which tried him. Petitioner relies on these same contentions in support of another, independent ground for invalidating his conviction for his not having received a trial by a fair and impartial jury.

The testimony received at the plenary evidentiary hearings, however, revealed that the "business dealing" was the proposal by petitioner to sell some acreage on his farm to Gorrell, which transaction was never completed and there was no evidence that the abortive "deal" left any really hard feelings in its wake. The testimony of petitioner on this contention is not credible. This contention is therefore without merit.

Therefore, petitioner's contentions in respect to ineffective counsel and violation of his right to trial by a fair and impartial jury are deemed by this Court to be without merit factually and legally.

Petitioner's final contentions are that his arrest was illegal, his request for indictment by grand jury was denied and that the prosecutor knowingly used perjured testimony against him at his original trial. These contentions have not hitherto been presented to the state courts, and no evidence was offered in this Court in the evidentiary hearing on these issues. Petitioner therefore has

---

4. For bank robbery.

not sustained his burden of the proof of the merit of these contentions.

For the foregoing reasons, it is

Ordered that the petition for habeas corpus be, and it is hereby, denied.