Walter L. HARVEY, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 85–0621–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Aug. 9, 1985.

Opinion After Response Aug. 29, 1985.

Walter L. Harvey, pro se.

William L. Webster, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

On June 7, 1985 this Court entered an order directing the Department of Correc- tions of Missouri to state on or before July 1, 1985 the circumstances under which it obtained custody of the petitioner and to attach copies of any documents pertaining to the designation of the petitioner's place of confinement. That order pointed out that petitioner's application for habeas cor- pus alleged that he had been "illegally transferred out of federal custody and into the custody of the Missouri Department of Corrections" and that the Missouri Depart- ment of Corrections was therefore "with- out jurisdiction and authority to retain cus- tody" of the petitioner. In order to be of assistance, this Court directed attention to 18 U.S.C. § 4082 which authorizes the At- torney General of the United States to des- ignate the place of confinement where a sentence imposed by a federal court shall be served.

On June 28, 1985 an Assistant Attorney General of the State of Missouri, as attor- ney for the Missouri Department of Correc- tions and Human Resources, filed a re- sponse to this Court's June 7, 1985 Order which simply stated that on June 25, 1985, the Supreme Court of Missouri reversed a death sentence imposed after a jury verdict of guilty rendered in the Circuit Court of Boone County, Missouri. The Assistant Attorney General added that he had been in contact with the St. Louis County Prose- cuting Attorney who had advised him that the petitioner would soon be returned to the custody of St. Louis County for re-trial. For reasons neither stated nor apparent, the Assistant Attorney General stated that the Supreme Court of Missouri's reversal of petitioner's State court conviction some- how rendered this case moot.

On July 3, 1985 petitioner filed a traverse to the response filed by the Assistant At- torney General which accurately pointed out that the action of the Supreme Court of Missouri in connection with petitioner's State court conviction had no effect on the question presented by petitioner's applica- tion for federal habeas corpus. Petitioner again alleged that he was not being held in State custody in compliance with 18 U.S.C. § 4082. Petitioner's traverse prayed that

he be returned forthwith to the custody of the Attorney General of the United States. Petitioner also filed a request for a protective order which would prohibit petitioner's placement in one of Missouri's County jails.

On July 9, 1985 this Court entered its memorandum which expressly found that the June 28, 1985 response filed by the Assistant Attorney General did not comply with this Court's June 7, 1985 Order and entered a second order directing compliance with its initial order on or before July 19, 1985.

Thereafter, on July 19, 1985 the Assistant Attorney General filed a further response which stated in substance that the Records Office at the Missouri State Penitentiary has informed counsel that no documents existed in petitioner's file that might relate to how the Missouri Department of Corrections may have obtained custody of the petitioner pursuant to any federal statute. That response further stated that the "United States Attorney would appear to be the appropriate authority to represent the federal prison authorities in this area." How or why the federal prison authorities were to be considered as parties in a habeas corpus proceeding that presented the question of whether petitioner was being legally held by the State was not explained. The most recent filed response also advised this Court that the petitioner had most recently been removed from the Missouri State Penitentiary and is presently being held in the St. Louis County Jail, Clayton, Missouri, as a pretrial detainee. The Assistant Attorney General then stated that his office does not represent St. Louis County, is not involved in the re-trial of the petitioner, and that the appropriate party in this instance would be the St. Louis County Prosecuting Attorney. The response did not attempt to state why or how the St. Louis Prosecuting Attorney could be considered as an "appropriate party" in this habeas corpus proceeding.

Because of the Assistant Attorney General's failure to comply with two orders of this Court, his suggestion that this Court make inquiry of persons other than the persons alleged to have custody of the person detained, and, most important, the advice that petitioner had been transferred from the Missouri Penitentiary at Jefferson City to the St. Louis County Jail, the Court requested the Chief Probation Officer of this Court to obtain accurate information in regard to the manner in which the Missouri Department of Corrections obtained custody of the petitioner as alleged in petitioner's application for federal habeas corpus was filed.

A single telephone call by the Chief Probation Officer led to the production of the following documents: Warden O'Brien's August 9, 1984 letter to Superintendent Wyrick of the Missouri Department of Corrections at Jefferson City, attached hereto as Exhibit A; Warden Armontrout's August 22, 1984 letter to Warden O'Brien, attached as Exhibit B; a copy of the Section 4082 order transferring petitioner from the United States Penitentiary at Leavenworth, Kansas to the United States Penitentiary at Marion, Illinois, attached hereto as Exhibit C; a copy of the Section 4082 transfer order from the United States Penitentiary at Marion, Illinois to the Missouri Department of Corrections for the concurrent service and execution of the State court sentence imposed by the Circuit Court of Boone County, Missouri before its recent reversal by the Supreme Court of Missouri, attached as Exhibit D; and a copy of a memorandum forwarded to the federal authority by H.F. Lauf, Records Officer of the Missouri Department of Corrections, advising that the petitioner had been received by the Missouri State Penitentiary on March 19, 1985 attached as Exhibit E.

The Court has been advised that the first knowledge that the Federal Bureau of Prisons had of the transfer of the petitioner from the Missouri penitentiary at Jefferson City to the St. Louis County Jail was obtained as a result of the inquiry made by the Chief Probation Officer of this Court. We attach hereto as Exhibit F a copy of a Section 4082 order designating the St. Louis County Jail for the service of Mr.

Harvey's federal sentence. Needless to say, the Federal Bureau of Prisons was unhappy to learn, solely as a result of this Court's independent inquiry, that petitioner's State court conviction has been reversed by the Supreme Court of Missouri and that the petitioner had been moved to the St. Louis County Jail for re-trial without notice to the federal authorities. Warden O'Brien's August 9, 1984 letter (Exhibit A) made clear that "It is essential that we be notified concerning any change in his [petitioner's] status."

The independent research required by the inadequate responses made by the Assistant Attorney General of the State of Missouri required this Court to also ascertain that petitioner was convicted in the United States District Court for the Eastern District of Missouri of numerous federal crimes for which he was given an aggregate term of 120 years imprisonment. The Judgment and Commitment Order entered by the United States District Court for the Eastern District of Missouri on June 6, 1983 was affirmed by the Court of Appeals for the Eighth Circuit in *United States v. Harvey*, 756 F.2d 636 (8th Cir.1985).

Section 4082 of Title 18 of the United States Code in its pertinent part provides that:

> (a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.
>
> (b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, *whether maintained by the Federal Government or otherwise, and whether within or without the judicial district* in which the person was convicted, and may at any time transfer a person from one place of confinement to another. (Emphasis ours).

*Genovese v. Ciccone*, 331 F.Supp. 1117, 1118 (W.D.Mo.1971), appropriately stated that "under the provisions of Section 4082, Title 18, United States Code, the place of a federal prisoner's confinement is vested in the discretion of the Attorney General or his authorized delegate." That case added that "[i]n the absence of exceptional circumstances or the denial of a federal constitutional or statutory right, the exercise of that discretion will not be reviewed in the Courts."

As a result of this Court's independent research, it is obvious that the St. Louis County Jail has been appropriately designated pursuant to the authority conferred by Section 4082 as the place of confinement where petitioner's federal sentence shall be served. An order will therefore be entered denying the petition for habeas corpus.

A further order, however, will be entered requiring the Assistant Attorney General of the State of Missouri to advise this Court as to whether Warden O'Brien's August 9, 1984 letter to Superintendent Wyrick, attached as Exhibit A, and whether Warden Armontrout's August 22, 1984 response to Warden O'Brien's letter, attached hereto as Exhibit B, were in petitioner's file as maintained by the Missouri Department of Corrections. That response shall further state what effort was made, if any, to obtain the information from the Federal Bureau of Prisons that this Court was required to obtain in regard to the various Section 4082 transfer orders and designations attached hereto as Exhibits C, D and F.

This Court may enter a further order after considering the response to Order (2) below.

For the reasons stated, it is

ORDERED (1) that petitioner's May 30, 1985 application for federal habeas corpus should be and the same is hereby denied. It is further

ORDERED (2) that on or before August 16, 1985 the Assistant Attorney General of the State of Missouri who represented the Missouri Department of Corrections in this case shall file a response to this Order in which he shall state whether Warden

O'Brien's August 9, 1984 letter to Superintendent Wyrick, attached as Exhibit A, and whether Warden Armontrout's August 22, 1984 response to Warden O'Brien's letter, attached hereto as Exhibit B, were in the petitioner's file as maintained by the Missouri Department of Corrections. That response shall further state what effort was made, if any, to obtain the information from the Federal Bureau of Prisons that this Court was required to obtain in regard to the various Section 4082 transfer orders and designations attached hereto as Exhibits C, D and F.

## OPINION AFTER RESPONSE

### I.

On August 16, 1985 the Attorney General's Office filed a response to Order (2) entered by this Court on August 9, 1985. That response was signed on behalf of the Attorney General of Missouri by the Chief Counsel of the Criminal Division of that office and by the Assistant Attorney General who filed the various responses to this Court's orders to show cause entered in the above case. The August 16, 1985 response stated that the "undersigned attorneys sincerely regret the evident conflict between what this Court desired this office to do, and what this office perceives to be its duty in this case."

This Court is concerned that the attorneys in the Attorney General's Office perceived that an "evident conflict," as distinguished from an "apparent conflict," existed between this Court and the Attorney General's Office in regard to how that office should have discharged its duty to this Court in regard to the responses filed to this Court's orders to show cause entered in this case.[1]

The purpose of this Court's August 9, 1985 Order (2) was to obtain accurate information in regard to what effort, if any, was made by the Attorney General's Office to obtain accurate information concerning the various Section 4082 designations under which the Missouri Department of Corrections was maintaining custody of the pro se petitioner. While we shall accept the expression of regret stated by the Attorney General's Office in its August 16, 1985 response to our Order (2) entered August 8, 1985, we believe that the procedures under which future habeas corpus cases are to be processed will be improved if we state in some detail the reasons why our August 9, 1985 memorandum in support of Order (2) described the various responses filed by the Attorney General's Office to this Court's orders to show cause as "inadequate."

### II.

As a matter of background, the Court en banc opinion published by this Court in *White v. Swenson,* 261 F.Supp. 42 (W.D.Mo. en banc 1966), shows that difficulties were being encountered approximately twenty years ago in regard to the manner in which federal pro se applications for habeas corpus were being processed. Those difficulties, and the position then being maintained by the Attorney General's Office in regard to how State prisoners were to exhaust their available State court postconviction remedies, prompted this Court to convene a conference with the then Attorney General of Missouri and six Assistant Attorney Generals who were then serving that office. A copy of the memorandum of that conference was attached as Appendix A to the published re-

---

1. We are also concerned that the Attorney General's Office read the memorandum filed in support of our August 9, 1985 Order (2) as "censorious" and one which carried a "highly critical tone." It was neither "unjust" nor "unwarranted," as suggested in the August 16, 1985 response, for this Court to have described the responses to its orders to show cause as "inadequate" in its August 9, 1985 memorandum. For the files and records in this case establish that the information in regard to the Section 4082 designations called for by those show cause orders was not furnished by the responses filed by the Attorney General's Office. The responses filed were therefore accurately described as "inadequate" because it was necessary for this Court to obtain the information in regard to the Section 4082 designations without the assistance of counsel.

port of *White v. Swenson*, 261 F.Supp. at 62–64.

That conference was convened by this Court in 1966 in a spirit of cooperation designed to improve the procedures under which the anticipated volume of federal pro se applications for habeas corpus that would be filed pursuant to the principles stated in the 1963 habeas trilogy of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), would be processed.

This Court stated in *White v. Swenson* that:

> This Court will continue to attempt to cooperate in every possible legal way with the trial and appellate courts of Missouri *and with counsel representing the State of Missouri* to the end that procedures be designed that will render the implementation of the trilogy least burdensome to all courts on whom the responsibility rests. (Emphasis ours).

261 F.Supp. at 56.

The difficulties that prompted that conference were substantially eliminated by changes of view on the part of the Attorney General's Office in regard to how the problems presented in processing pro se habeas corpus applications should be considered.[2] Further procedural improvements were implemented during the terms of Attorney General Danforth, all of which were continued under Attorney General Ashcroft. This Court has been gratified to be able to express its appreciation on frequent occasions for the cooperation and assistance that has been consistently extended over the years by various staff members of the Attorney General's Office in the many habeas corpus cases which have pended in this Court over the years.[3]

Experience over those years has established that changes in the personnel of the Attorney General's Office has sometimes produced apparent, as distinguished from evident, conflict between this Court and members of the staff of the Attorney General's Office in particular isolated cases. The manner in which the Attorney General's Office responded to this Court's orders to show cause entered in this case is an illustration of such an isolated case.

All apparent conflicts between this Court and the Attorney General's Office, however, have been resolved in the past by a review of the duties imposed on this Court and on counsel representing the State of Missouri in regard to the manner in which pro se habeas corpus applications must be processed. Such reviews have placed primary focus on the improvement of the procedures under which habeas corpus cases may be fairly and justly determined on their merits with the least expenditure of time on the part of all persons involved in handling the inevitably large volume of cases that are and will be filed by persons being held in State custody.

### III.

A current review of how habeas corpus petitions may be efficiently processed with the least expenditure of time on the part of the Attorney General's Office and on the part of this Court must be considered in the context of the views most recently ex-

---

**2.** In a paper delivered before the Ninth Circuit Judicial Conference in July 1968, entitled *Post-conviction Applications Viewed by a Federal Judge—Revisited*, 45 F.R.D. 199, we made reference to this Court's 1966 conference with the Attorney General of Missouri and his staff and stated that "[s]econdary benefits flow from conferences properly conducted. The cooperation this Court now receives from the Attorney General's office is exemplary. That resulted directly from the conference described and corrected a situation that was far from satisfactory for anyone. Our Court deeply appreciates and pub-

licly acknowledges our gratitude to the members of the Attorney General's staff with whom we are now able to work with mutual understanding." *Id.* at 219–20.

**3.** For a recent example of such an expression, *see Smith v. Wyrick*, 558 F.Supp. 600, 603 (W.D. Mo.1983), in which Assistant Attorney General Van Heest was commended both by this Court and by appointed counsel for the petitioner for the manner in which she assisted this Court in a particularly complicated habeas corpus case.

pressed by the Attorney General's Office in this particular case. For there can be no question that the manner in which this case was processed required the expenditure of a great deal of unnecessary time occasioned by the manner this Court was required to obtain, without the assistance of counsel, accurate information in regard to the Section 4082 designations under which the Missouri Department of Corrections obtained custody of the petitioner.

While the August 16, 1985 response filed by the Attorney General's Office contained the expression of regret above stated, that response attempts to excuse and justify the minimal investigation conducted by that office in regard to the responses filed to this Court's orders to show cause entered in this case. The August 16, 1985 response is based on the notion that only minimal investigation was required on the part of the Attorney General's Office for the reasons that the United States was erroneously named by the pro se petitioner as the party respondent in his habeas corpus application; because initial service was made on the United States Attorney; and because the pro se petitioner did not challenge the validity of his Missouri conviction and sentence.

The response suggests that under those circumstances, the Attorney General's Office was under duty to do no more than have the petitioner's Missouri Department of Corrections' classification file searched and thereafter to report to this Court that nothing had been found in that file as that file was maintained by the Missouri Department of Corrections.[4]

This Court's initial show cause order entered June 7, 1985 expressly stated, in order to be of assistance to the Attorney General's Office that "[i]t is appropriate that the Department of Corrections of Missouri be ordered to state the circumstances under which it obtained custody of petitioner and attach copies of the documents under which the Attorney General of the United States or his delegate acted pursuant to 18 U.S.C. § 4082."

The August 16, 1985 response to Order (2) does not so much as mention Section 4082. Rather, the response of the Attorney General's Office contends that it could have made some sort of an attempt "to challenge this Court's jurisdiction to order an investigation and response by an entity not named as a party in the cause and with no legal interest in the case." Such a suggestion could only be predicated on the notion that a pro se habeas corpus petition must be strictly read and that a pro se petitioner must be held to comply with the niceties of the rules of procedure that are applicable in the litigation of ordinary lawsuits.

Such a narrow view of the Great Writ is untenable. Any attempt to maintain such a view in this or in any other habeas corpus case can do no more than delay the determination of what otherwise would be the only deposition of the merits of an uncomplicated pro se habeas corpus application.

---

**4.** Experience in processing almost countless pro se petitions for habeas corpus over the years, filed by both State and federal prisoners, establishes that judicial notice may be taken of the fact that important factual data concerning the legality of a particular petitioner's custody frequently is *not* to be found in the *classification files* maintained by either the Missouri Department of Corrections or by the United States Bureau of Prisons. This case is a good example. For the August 16, 1985 response filed in this case does not state that the exchange of letters between the wardens of the State and federal penitentiaries attached to our August 9, 1985 memorandum as Exhibits A and B were never written or that copies of those letters were not in some file other than petitioner's classification file that was maintained by the Missouri Department of Corrections. The August 16, 1985 response simply reiterated that those letters "were not then and are not now to be found in the *classification file* of petitioner" (emphasis ours).

The fact that the letters were not in petitioner's classification file should have simply established that the Attorney General's Office needed to make further inquiry and investigation to find out where those letters had, in fact, been filed. And that additional inquiry and investigation would not have required the expenditure of much time, as was established by the manner in which the Court was able to obtain copies of the letters without the assistance of the Attorney General's Office.

## IV.

Long before the Supreme Court of the United States decided its 1963 habeas corpus trilogy, it recognized in *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), that the "historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court for whatever purpose might be essential to the proper disposition of a cause" and that "the principle has developed that the writ of *habeas corpus* should be left sufficiently elastic so that a court may, in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint. The rigidity which is appropriate to ordinary jurisdictional doctrines has not been applied to this writ." *Id.* at 283, 68 S.Ct. at 1059.

*Price v. Johnston* appropriately noted that the "primary purpose of a *habeas corpus* proceeding is to make certain that a man is not unjustly imprisoned," *id.* at 291, 68 S.Ct. at 1063, and that:

Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in *habeas corpus* proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession.

*Id.* at 292, 68 S.Ct. at 1063. *Price v. Johnston* further stated that the principles above quoted were based on "the importance of the writ and the necessity that it not lose its effectiveness in a procedural morass, ...." *Id.* at 269, 68 S.Ct. at 1052.[5]

It is therefore clear that the Court did no more than state and apply long established principles in *Sanders v. United States, supra,* when it stated that an "applicant for such [collateral] relief ought not to be held to the niceties of lawyers' pleadings or be cursorily dismissed because his claim seems unlikely to prove meritorious."

*Sanders* expressly held that a federal district judge "is free to adopt any appropriate means for inquiry into the legality of the prisoner's detention in order to ascertain all possible grounds upon which the prisoner might claim to be entitled to relief." 373 U.S. at 22, 83 S.Ct. at 1080.

*Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), noted that it was Blackstone who described habeas corpus as "the great and efficacious writ" and that the pre-eminent role of the Great Writ was "recognized by the admonition in the Constitution that: 'The Privilege of the Writ of Habeas Corpus shall not be suspended....'" That case further held that:

The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes— have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essental to insure that miscarriages of justice within its reach are surfaced and corrected.

*Id.* at 291, 89 S.Ct. at 1086.

*Harris v. Nelson* appropriately recognized that the Court was "aware that confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact." *Id.* at 300, 89 S.Ct. at 1091. The Court concluded, however, that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, *it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.*" (Emphasis ours). *Id.* at 300, 89 S.Ct. at 1091.

*Braden v. 30th Judicial Circuit of Ky.*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443

---

**5.** *See also Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), which held that the transfer of custody from the warden of a State penitentiary to a State Board of Parole did not deprive the district court of habeas corpus jurisdiction. That case held that it "is not now

and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Id.* at 243, 83 S.Ct. at 377.

(1973), noted that the "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody" and that *"[s]o long as the custodian can be reached by service of process,* the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, ...." (Emphasis ours). *Id.* at 494, 495, 93 S.Ct. at 1129.

It was, of course, obvious from the outset of this case that the Missouri Department of Corrections was, in fact, the petitioner's custodian at the time he filed his pro se habeas corpus application. It was also obvious, but quite unimportant, that the pro se petition failed, as have many petitions in the past and as will many petitions in the future, to properly name the Missouri Department of Corrections as a respondent in this case. It should have been further obvious that this Court could and would have entered a formal order substituting the Missouri Department of Corrections as the proper party respondent had there been any real necessity for so doing.

This Court did not deem it necessary to do so in reliance upon the recognition which the incumbent Attorney General's Office and past Attorney General's Offices have given to the principles above stated in regard to how a pro se application must be read. Appropriate recognition of those principles would have advised the Attorney General's Office in this case that any motion that it might have filed for the purpose of challenging this Court's habeas corpus jurisdiction based on the notion that the Missouri Department of Corrections was not "named as a party in the cause" and on the notion that the Missouri Department of Corrections had "no legal interest in the case," as stated in the August 16, 1985 response filed by the Attorney General's Office, would have been summarily denied and that a formal order of substitution of the party respondent would have been entered as a matter of course. For there is no question about the fact that petitioner's actual custodian could, as stated in *Braden,* "be reached by service of process" and there can be no question that this Court is under duty, as stated in *Harris v. Nelson* "to provide the necessary facilities and procedures for an adequate inquiry."

As a practical matter, the formal substitution of the Missouri Department of Corrections as the properly named respondent in this case would not have in any way advanced the determination of the merits of the pending pro se habeas corpus application. The narrow view taken by the Attorney General's Office in regard to the absence of any duty on its part to make adequate inquiry in assistance to this Court in regard to whether the paperwork required by Section 4082 had been accomplished necessitated the expenditure of a great deal of unnecessary and unproductive time on the part of everyone concerned with this case.[6]

## V.

We express the hope that some long term benefit may be realized from the time expended in what should have been an uncomplicated case. For this case illustrates how appropriate inquiry and the filing of an adequate response to an initial order to show cause by the Attorney General's Office most frequently enables this Court to dispose of the merits of a pro se habeas corpus application with a minimum amount of time expended by either the Attorney General's Office or by this Court.

---

**6.** John Fox Arnold devoted the President's Page of the current issue of Journal of the Missouri Bar (July-August 1985, p. 281) to the subject of "Professionalism: Duties in Balance." President Arnold called for a return to the professionalism of an early day and made reference to what David Dudley Field said long ago in regard to the professional duties of a lawyer. Arnold noted that "David Dudley Field said in 1855 that a lawyer's first duty is 'undoubtedly to his own client, but that is not his only one; there is also duty to the court, that it shall be assisted by the advocate; ....'"

We agree with President Arnold's implicit suggestion that the orderly administration of justice requires that present day lawyers must recognize and discharge their duty to assist the court in all cases where assistance is necessary.

As we stated at the outset, we accept the expression of regret stated by the Attorney General's Office. We are fully satisfied that such expression was made in good faith. We are further satisfied that the experience gained by this case may result in this Court being able to publicly commend the present Attorney General's Office on its discharge of duty to assist this Court in future cases as it has been able to do in its published opinions in many habeas corpus cases in the past.

We find and conclude that no further orders need be entered in this case.